UINTA OIL REFINING COMPANY, a Utah Corporation, and Utah Cooperative Association, a Utah Corporation, Plaintiffs,

v.

CONTINENTAL OIL COMPANY, Texaco, Inc., Phillips Petroleum Company, Standard Oil Company of California, California Oil Company, American Oil Company, and Sinclair Refining Company, Defendants.

No. C 5–62.

United States District Court
D. Utah,
Central Division.

Feb. 12, 1964.

C. E. Henderson, Donald B. Holbrook, Daniel L. Berman, W. Robert Wright, and Wallace R. Bennett, Salt Lake City, Utah, and Joseph L. Alioto, San Francisco, Cal., for plaintiffs.

Dennis McCarthy, Salt Lake City, Utah, and William L. Kaapcke, San Francisco, Cal., for defendants California Oil Co. and Standard Oil Co. of California.

Marvin J. Bertoch, Salt Lake City, Utah, and W. T. Kuhlmey, Chicago, Ill., for defendant American Oil Co.

Harley W. Gustin, Salt Lake City, Utah, for defendant Sinclair Refining Co.

John W. Lowe, Salt Lake City, Utah, and William M. Griffith, Denver, Colo., for defendant Continental Oil Co.

Brigham E. Roberts, Salt Lake City, Utah, and George Jansen, Los Angeles, Cal., for defendant Texaco, Inc.

Wilford M. Burton, Salt Lake City, Utah, for defendant Phillips Petroleum Co.

CHRISTENSEN, District Judge.

Presented for decision upon submitted discovery objections in this antitrust suit [1] are peripheral problems under the "work product doctrine" applied by the Supreme Court in Hickman v. Taylor,[2] as well as the extent and depth to which defendants should be allowed pre-trial access through Rule 33 interrogatories [3]

---

1. Alleged conspiracy and monopoly under Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2; alleged price discrimination under Section 2(a) (d) and (e) of the Clayton Act as amended by Robinson-Patman Price Discrimination Act, 15 U.S.C.A. § 13.

2. 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); aff'd 3rd Cir., 153 F.2d 212 (1945), which rev'd 4 F.R.D. 479 (D.C. E.D.Pa., 1945).

3. Federal Rules of Civil Procedure, 28 U.S.C.A. Rule 33.
   "Interrogatories to Parties
   "Any party may serve upon any adverse party written interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association, by any officer or agent, who shall furnish such information as is available to the party. * * * The interrogatories shall be answered sepa-

to relevant information within the possession or control of the opposing parties, the questions of burdensomeness, privilege and work product aside. Pervasively shadowing these inquiries is the common experience of mankind that at some inconstant point, as to every element or device, there may be too much of a good thing.

The interrogatories submitted by the defendants to which objections have been made by plaintiffs number almost one-hundred out of a larger number.[4] These interrogatories are prefaced by an elaborate definition schedule [5] which, it is stated, "shall be considered a part of each and every interrogatory whenever applicable". Objection is made by plaintiffs to the various interrogatories on the grounds [6] that they are premature, ask in unreasonable advance [7] for minute details of trial evidence and of the manner in which the case is to be tried, constitute an invasion of plaintiffs' work product or are contrary to the general guide-lines for discovery established for this case by Pre-Trial Conference Order No. 2.[8] The

rately and fully in writing under oath. * * * Interrogatories may relate to any matters which can be inquired into under Rule 26(b), and the answers may be used to the same extent as provided in Rule 26(d) for the use of the deposition of a party. Interrogatories may be served after a deposition has been taken, and a deposition may be sought after interrogatories have been answered, but the court, on motion of the deponent or the party interrogated, may make such protective order as justice may require. The number of interrogatories or of sets of interrogatories to be served is not limited except as justice requires to protect the party from annoyance, expense, embarrassment, or oppression. The provisions of Rule 30(b) are applicable for the protection of the party from whom answers to interrogatories are sought under this rule."

4. Of course, mere number of interrogatories is no basis for objection. Rule 33, Federal Rules of Civil Procedure, 28 U.S.C.A.

5. Among the definitions in this schedule are: "Transaction" means an event, occurrence, conversation, communication or other occasion or happening or circumstances of whatever nature; "Describe" calls for the time and place of the act and transaction and sufficient details fairly to apprise each defendant of the act or transaction to be proved, the parties thereto, the individuals participating therein, and if such person acted or purported to act in a representative capacity, the principals for whom they acted or purported to act; "Specify" calls for (a) as to writing or document, (1) the date thereof, (2) a description of the writing or document in sufficient detail to enable it to be identified, (3) the name of the author, and (4) the name

and location of the person having custody thereof; (b) as to oral agreements, contracts, understandings, or communications. * * * (1) the time and place thereof, (2) the name of each person participating therein, and (3) the substance of each "oral communication"; "Identify", when used in relation to a person, calls for: (a) the name of the person, whether a natural person, association, partnership, corporation, or other form of legal entity, (b) the last known address, and (c) the business affiliation; "Participated directly" calls for factual information, separately stated as to each defendant, with respect to each act and transaction which was actually performed by or participated in by any defendant acting through its own officers, employees or agents, with each such officer, employee or agent who acted for or on behalf of any such defendant being named or otherwise identified.

6. Instead of directly stating the grounds of objections, the plaintiffs, too, embrace the currently popular schedule system, incorporating detailed introductory statements, by reference, with objections to the various interrogatories. I have not attempted to integrate all of this material with the statement of the ultimate objections, except to consider it as argument.

7. Discovery is far from complete and the prospective trial date is more than six months away.

8. "17(a) Reasonable care and diligence shall be employed by defendants to assure that answers to the plaintiffs' interrogatories, as required by said rulings, are served and filed within ninety days from the date of this pretrial order, and, as to any interrogatory in response to which this proves impossible, the answers shall present such information as then can be made available, with an explana-

interrogatories thus objected to are these:

"INTERROGATORY NO. 1. Describe each act and each transaction occurring prior to January 1, 1962, upon which plaintiffs expect to rely at the trial; name each defendant whom plaintiffs claim participated directly in each such act or transaction; specify each writing, document, and 'oral communication' which plaintiffs propose to offer as proof at the trial in support of each such act or transaction; and state the particular allegation in the complaint [9] which each such act or transaction tends to support."

Interrogatories Nos. 2–11, 15–17, 19, 21–40, 67, 68(b), and 69–80 would require in totality the same information required by Interrogatory 1, the difference being that each questioned allegation of the complaint is referred to separately and plaintiff is asked to specify the evidence existing or to be used in support thereof at the trial.[10] These complemen-

---

tion of why all of the information cannot be timely produced, the efforts being made to produce it and when it can be made available. (b) Answers shall be verified by a responsible official of the answering corporation in a preferred position to do so, and shall be responsive and complete or reasonable grounds for any incompletion shall be specified. (c) Where a showing is made in the answer that the furnishing of the more precise data which were called for reasonably would be impossible, the best and most considered estimates or approximates reasonably possible should be furnished, the basis or foundation for these being indicated, without prejudice to the subsequent consideration of objections on the part of plaintiffs to the sufficiency of the answers. * * * (g) As to the required answers concerning which objection was made on the ground that they would constitute confidential information or trade secrets, a defendant may submit a separate addendum to its answers to interrogatories marked "Confidential", to be referred to only generally in its answers proper, the originals of which addenda shall be kept under seal by the clerk until further order of the court. Copies served upon counsel and the information contained therein shall be furnished and received in strict confidence by the parties and their attorneys, officers and agents, the number of whom shall be kept at the minimum reasonably essential, to be used for no other purpose than for preparation for the trial in this case. * * * " An additional ruling was made on objection to one of the interrogatories of this set that it "may be answered upon the basis of reasonable inquiry among personnel where the data are not contained in immediately available records, without necessarily including a line by line or record by record examination or computation from the books, together with an identification by cate-

gory of the records of the company by means of which such estimates might be checked or made more precise."

9. Actually we are concerned with a "Third Amended Complaint", but shall continue to refer to it generally as "the complaint".

10. Typical examples are:
INTERROGATORY NO. 3. With respect to the continuing agreement and concert of action alleged in paragraph 17 of the complaint, state whether or not each defendant agreed to all the terms of the alleged conspiracy. 1. If any defendant did not agree to all the said terms of said continuing agreement and concert of action state which defendants agreed to which of said terms. 2. As to each of said terms of said agreement and concert of action to which any defendant agreed: (a) State whether plaintiffs have direct evidence of the agreement to said term by any defendant or defendants (naming in each instance the defendant or defendants); and (b) State whether the fact of agreement to said term by any defendant or defendants (naming in each instance the defendant or defendants) is sought to be inferred from indirect evidence, and if so specify the indirect evidence from which this inference is to be drawn. 3. As to each of said terms on which plaintiff has direct evidence of agreement by one or more defendants, state with respect to each such term and each such defendant: the date on which said term was agreed to by defendant or defendants; identify the persons who participated directly therein; state whether the agreement is in writing or oral; if in writing, specify the writing; if oral, specify the oral communication and state the name and address of each person having knowledge of such communication.
INTERROGATORY NO. 15. With re-

tary interrogatories only confirm that the depth of the inquiry indicated by Interrogatory 1 is not illusionary, and that defendants actually seek specification of each and every detail of evidence (except the contents of written documents) upon which plaintiffs intend to rely at the trial to support each and every separate material allegation of the complaint.[11] These two types of interrogatories raise essentially the same problem.

Interrogatories 12 and 18 concern possible admissions of defendants known to plaintiffs. Interpreting these inquiries as referring to direct or express admissions, rather than any array of circumstances involving the defendants from which plaintiffs merely claim a conspiracy may be inferred,[12] the objections should be overruled.

Interrogatory 13 asks for a specification of all documents which plaintiffs will attempt to introduce at the trial concerning the alleged conspiracy. Interrogatory 14 asks for the identification of each person whom plaintiffs intend to call on the issue of conspiracy at the trial. These interrogatories involve some of the problems which are connected with Interrogatory 1 and the numerous fragmented interrogatories going to the same inquiry, and will be treated later.

Interrogatories Nos. 41–44, 47–66 and Supplemental Interrogatory 8 relate mainly to details concerning plaintiffs' damage claims and supporting information that may be presently available. Within the "rules of reason" heretofore applied to responses to plaintiffs' interrogatories, plaintiffs should respond.

Interrogatories Nos. 82–83, 90, 91, 94, 95, 102, 103, 106, 107, 117, 118, 119, 120, 122, 123, 124, 126, 127, and 133 relate largely to plaintiffs' operations, call for presently available data which seem relevant or likely to lead to relevant information, and do not present the problems that some of the other interrogatories suggest. The plaintiffs should make responsive and reasonably detailed answers within the guiding rules heretofore and herein established without being

spect to the allegation of paragraph 18 of the complaint that defendants have attempted to monopolize and do now attempt to monopolize interstate trade or commerce, state the first act and transaction of each defendant as to each of the plaintiffs pursuant to the alleged attempt to monopolize, describe similarly each subsequent act or transaction of each defendant as to each of the plaintiffs in furtherance of said alleged attempt to monopolize and in connection therewith specify each writing, document or oral communication which plaintiffs, or either of them, expect to offer as proof of each act or transaction.

INTERROGATORY NO. 69. With respect to paragraph 9 of Count II(A) of the complaint, identify, including in such identification the date, purchaser, place, price and products concerned, each alleged discriminatory sale contemplated by the charging portion of this paragraph; and in connection therewith specify each writing, document and oral communication which plaintiffs, or either of them, expect to offer as proof at trial of each such alleged discriminatory sale.

INTERROGATORY NO. 73. With respect to each alleged discriminatory sale listed in response to Interrogatory No. 72 as having injured plaintiffs, or either of them, state the monetary amount of damage claimed for the injury allegedly so inflicted by such sale, and in connection therewith specify each writing, document or oral communication which plaintiffs, or either of them, expect to offer as proof of each such item of damage and the amount thereof.

INTERROGATORIES NOS. 76–80. Answer. Interrogatories numbered 67 to 75 above, with respect to Count II(B) of the complaint against defendant Texaco, Inc., reading said interrogatories, where appropriate, as applying to Count II(B) of the complaint against defendant Texaco. (Or to Phillips, Standard, American or Sinclair according to the corresponding paragraph references).

11. Since the parties already have substantially agreed upon the material issues of fact, it might be more reasonable and realistic to refer to these, if evidence were to be so categorized at this time. The pleadings later will be merged into the final pre-trial order in accordance with the general practice of the court.

12. Cf. United States v. Carter Products Inc., D.C.S.D.N.Y., 28 F.R.D. 373 (1961).

bound by the technicalities of the defendants' definition schedule.

■ Interrogatory 128 seeks information concerning the terms of settlements entered into by plaintiffs with certain other defendants originally named. This information should be supplied, as it is at least relevant on the question of damages.[13]

■ Interrogatory 129, asking for the identification of other persons having interest (presumably pecuniary) in the litigation, is permissible except as to the contingent fee interest of plaintiffs' counsel, which seems immaterial if not irrelevant.

■ Interrogatory 130 asks for the names of persons sharing in the costs of the litigation. The plaintiffs' assertion that the disclosure of this information will enable defendants to intimidate or penalize plaintiffs' supporters is not sufficient to preclude an otherwise proper inquiry. Especially in the sensitive atmosphere of pending antitrust litigation intimidations are not to be lightly presumed, and adequately can be dealt with otherwise should the necessity arise. The requested information may have some bearing upon motives, credibility, damages and relevant relationships within the industry.

Interrogatory 131 calls for an identification of each person having knowledge of facts relevant to the subject matter of the action. Interrogatory 132 seeks the names of persons from whom affidavits, memoranda or statements have been requested or taken by plaintiffs with a specification of each. These questions will be ruled on following discussion of the broader aspects of similar problems in relation to Interrogatory 1. We return, then, to the latter interrogatory.

Upon cursory reading Interrogatory No. 1 may seem fairly simple and reasonable. It calls only for relevant information, for defendants with seeming generosity have limited its scope to matters which plaintiffs themselves deem sufficiently relevant for introduction at trial. It presumably asks only about matters which plaintiffs believe support the various allegations of their complaint leaving this classification up to them. It can hardly be deemed uncertain or confusing, since a demand for "everything" or "all" within defined categories in a sense is rather definite notwithstanding other objections that might lie to its breadth or depth.[14] Resulting burdens [15] would not seem sufficient to deprive defendants of the information sought here if otherwise discoverable. Moreover, no objection has been made by plaintiffs on the ground of mere burden. The defendants with no little persuasiveness ask why this simple though searching question should not be answered in this case. I have concluded that the implications of the question should not be avoided upon any vague conclusion of burden. Is it possible that here could be the single-shot, ultimate, discovery weapon which could be used by every party [16] in every case,[17] as a type of standardization attempted in several other districts?[18] Instead of the seventy questions in one of those forms, however, one question could suffice and might ren-

13. Bratt v. Western Air Lines, 10th Cir., 169 F.2d 214 (1948), cert. den. 335 U.S. 886, 69 S.Ct. 239, 93 L.Ed. 425, cited by plaintiffs in opposition, involved admissibility of such evidence before the jury rather than during discovery stage.

14. Cf. Stovall v. Gulf and South American Steamship Company, D.C.S.D.Texas, 30 F.R.D. 152, 154 (1961); Gaynor v. Atlantic Greyhound Corp., D.C.E.D.Pa., 8 F.R.D. 302 (1948).

15. Used to include "annoyance, expense, embarrassment or oppression" as mentioned or referred to in Rule 33.

16. The technique would be adaptable to both sides, and of course one should not be permitted to hit with the rule and then run.

17. If proper in a complicated case such as this it clearly would be proper in simpler cases.

18. "Developments in the Law-Discovery," Vol. 74, Harvard Law Review, 940, 961-962 (1961).

der unnecessary most other types of discovery.

Integrating the definition schedule with the interrogatory it will be seen that plaintiffs are confronted with the following initial demand:

State the time and place, and sufficient details fairly to apprise each defendant of each act, event, occurrence, conversation, communication or other occasion, happening, or circumstance of whatever nature occuring prior to January 1, 1962 (the month of the filing of the complaint) upon which plaintiffs expect to rely at the time of the trial, including the parties thereto and the individuals participating therein; name each defendant who plaintiffs claim participated directly in such acts, events, occurrences, conversations, communications, occasions, happenings or circumstances; specify, if any such act, event, occurrence, conversation, communication, occasion, happening or circumstance involved writings or documents, the date thereof, a description of the writings or documents in sufficient detail to enable them to be identified; the names of the authors and the names and locations of the persons having custody thereof; and as to any oral agreements, contracts, understandings or communications which plaintiffs propose to offer as proof at the trial, state the time and place thereof, the name of each person participating therein and the substance of each such oral agreement, contract, understanding or communication; and state the particular allegation in the complaint which each such act, event, occurrence, conversation, communication, occasion, happening or circumstance tends to support.[19]

The defendants contend that all of their interrogatories, as extended by the definition schedule, are both proper and necessary; that each of the purported grounds of objection is "specious and without merit". It is pointed out that the burden is upon plaintiffs to sustain their objections.[20] Interrogatories framed in the language of a plaintiff's allegations, it is said, are justified as calling only for the facts upon which those allegations are based;[21] that the Rules themselves contemplate necessary details not required in the complaint will be available through discovery.[22] Hickman is cited[23] as having performed final rites for "the time-honored cry of 'fishing expedition'", and defendants quote its language, so dear to the searcher and distasteful to the possessor, that "either party may compel the other to disgorge whatever facts he has in his possession".

■ Plaintiffs, in addition to their more general objections, particularly object to the form of many of the inquiries as calling not for presently available facts but for plaintiffs' intentions with respect to the trial. The latter objection is clearly meritorious.[24]

But I do not rest my decision wholly upon this narrow ground. If this were

---

19. The other related interrogatories in combination seem to call for the same scope and depth of information, the main difference being that they furnish some form for classification of the requested detail, while Interrogatory No. 1 leaves this problem of classification, segregation and allocation wholly to the judgment and skill of opposing counsel.

20. B. & S. Drilling Co. v. Halliburton Oil Well Cementing Co., D.C.S.D.Tex. Houston Div., 24 F.R.D. 1 (1959).

21. Singer Mfg. Co. v. Brother International Corp., D.C.S.D.N.Y., 191 F.Supp. 322 (1960).

22. Interborough News Co. v. Curtis Pub. Co., D.C.S.D.N.Y., 14 F.R.D. 408 (1953).

23. At page 507 of 329 U.S. at p. 392 of 67 S.Ct. 91 L.Ed. 451.

24. Truck Drivers and Helpers v. Grosshans & Petersen, Inc., D.C.D.Kan., 209 F.Supp. 161 (1962); B. & S. Drilling Co. v. Halliburton Oil Well Cementing Co., D.C.S.D.Tex., Houston Div., 24 F.R.D. 1 (1959); Central Hide & Rendering Co., v. B-M-K Corporation, D.C. D.Del., 19 F.R.D. 294 (1956); United States v. Proctor & Gamble Company, D.C.D.N.J., 25 F.R.D. 252 (1960).

done defendants would be encouraged merely to revise their interrogatories to meet superficial requirements. More difficult and perhaps more important problems squarely presented would thus be sidestepped and no doubt would have to be met again almost immediately in this and other cases before the court.

Hickman clearly rules out other phases of Interrogatory 1 and related ones. In the Hickman case the issue was relatively clean-cut, although challenging; only one interrogatory was involved, and the statements and documents sought were pinpointed. Yet Justice Murphy speaking for the court said:

"Rule 30(b), as presently written, gives the trial judge the requisite discretion to make a judgment as to whether discovery should be allowed as to written statements secured from witnesses. But in the instant case there was no room for that discretion to operate in favor of the petitioner. No attempt was made to establish any reason why Fortenbaugh should be forced to produce the written statements. * * *

"But as to oral statements made by witnesses to Fortenbaugh, whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production. * * * * " [25]

The interrogatories under discussion call for the substance of numerous conversations which would be known only through interviews of counsel and which would inevitably represent "mental impressions or memoranda" of counsel. From this standpoint, to approve them would be to invite a shotgun blast at plaintiffs' work product when even a selective piercing by rifle bullet, as it were, has been held impermissible.

But I believe that Hickman v. Taylor has still broader implications in the context of this case, and while it certainly is the broad highway over which we must travel to find the limitations to discovery under Rule 33, it may not be the end of the road. The full meaning of Hickman may be obscured a little by the "work product of lawyer" term. There was but a single reference to it in the majority opinion.[26] The concurring opinion of Mr. Justice Jackson did not even mention it. The distinguished panel of the Third Circuit which apparently brought it into being itself expressed some misgivings about it.[27] Yet despite wide differences in interpretation among lower courts,[28] the term has come to represent a manageable and basic concept. It seems prob-

**25.** 329 U.S. at p. 512, 67 S.Ct. at p. 394, 91 L.Ed. 451.

**26.** "This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case [153 F.2d 212, 223] as the 'work product of the lawyer.'" p. 511 of 329 U.S., p. 393 of 67 S.Ct., 91 L.Ed. 451.)

**27.** The Court of Appeals in Hickman said (153 F.2d at p. 223): "This is a phrase which seems pretty well to describe what we are after, though we hesitate to adopt it as a label for our concept for fear that it may contain implications not now apparent to us."

**28.** "Commentators and courts alike have differed in their view of the underlying rationale for the work-product doctrine and perhaps for this reason have differed in defining its scope. One school of thought, relying upon the emphasis in the Hickman opinion on the importance of preserving the privacy of a lawyer's 'mental processes,' has concluded that the doctrine is intended largely to immunize trial strategy from discovery [citing Guilford Nat'l Bank v. Southern Ry., 24 F.R.D. 493, 499 (M.D.N.C.1960)]. The district courts, however, have often taken a broader view and also prohibited discovery of materials in whose preparation a lawyer's mental processes have played little part [citing Snyder v. United States, 20 F.R.D. 7, (E.D.N.Y.1956)] * * *. Since the reasons behind the broader view have not been clearly articulated by the lower federal courts, further inquiry into the bases and extent of the work-product 'privilege' seems necessary." "Developments—Discovery," 74 Harvard Law Review 940, 1027–1028 (1961).

able, however, that Hickman may have broader implications than the term indicates, obscured by proliferated reference to "the work product of counsel" doctrine.

It is true that reasoning by the Supreme Court was tied primarily to the position of the lawyer Fortenbaugh. But the decision vacated not only the contempt conviction of the lawyer, but also that of the tug-owner defendants who had refused to make the ordered discovery. Other phases of the decision [29] suggest that unacceptable pressure against the lawyer-client relationship may be diffused, as well as direct, and that impermissible encroachment upon the adversary system may be so overspread as to be somewhat imperceptible, as a tide. In any event, whether or not directly stemming from Hickman, there is another dimension within which this court may exercise its broad discretion [30] in ruling upon interrogatories to parties. This involves the appropriateness of rigidifying, classifying, or specifying in excessive depth the evidence available to the respective parties in relation to various stages in the judicial process. A foundational principle of both modern discovery and modern trial under our adversary system is epitomized in Hickman: "Mutual

knowledge of all the relevant facts gathered by both parties is essential to proper litigation".[31] That there was added a statement that "(t)he deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise" does not erase the line between the trial and pre-trial discovery. There were far reaching limitations there actually imposed to pre-trial discovery that might not be applicable at the trial.

The adversary system involves several components,[32] the operations of which are correlative rather than separate. That there is a time and place for everything, however, applies as well today in matters of legal procedure as in other aspects of life and death in their good seasons. While there may be more than one time and place, the rule of appropriateness may often limit multiple choices.

The components of the judicial process are bounded not only by lines of subject matter and procedure, but time; what would be proper as a part of the trial component would not necessarily be proper at the discovery stage. Many examples of this proposition are furnished in the cases.[33] The same principle would apply

29. " * * * The problem thus far transcends the situation confronting this petitioner. And we must view that problem in light of the limitless situations where the particular kind of discovery sought by petitioner might be used.

"* * * Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." (Mr. Justice Murphy, speaking for the court at p. 507 of 329 U.S., at p. 391–393 of 67 S.Ct., 91 L.Ed. 451.)

"* * * But a common law trial is and always should be an adversary proceeding. Discovery was hardly intended to

enable a learned profession to perform its function either without wits or on wits borrowed from the adversary. * * *

"I can conceive of no practice more demoralizing to the Bar than to require a lawyer to write out and deliver to his adversary an account of what witnesses have told him". (Concurring opinion of Mr. Justice Jackson, 329 U.S. p. 516, 67 S.Ct. p. 396, 91 L.Ed. 451.)

30. Newell v. Phillips Petroleum Co., 10th Cir., 144 F.2d 338 (1944); see also United States v. Proctor & Gamble Co., D.C.D.N.J., 25 F.R.D. 252 (1960).

31. 329 U.S. at 507, 67 S.Ct. at 392, 91 L. Ed. 451.

32. These may be termed (1.) The Investigatory Component; (2.) The Notice Component; (3.) The Discovery Component; and (4.) The Trial Component, including both the final pre-trial conference and the trial itself.

33. Wirtz v. B. A. C. Steel Products, Inc., 4th Cir., 312 F.2d 14 (1962); Fisher-

to the court's making up its mind on the merits, the freezing of legal theories, the final evaluation of truth and the cutoff of further evidence, as well as to the justifiable depth of the exchange of information. Certainly at the time of trial, and largely by the time of the final pre-trial conference, each party must have access to the detail as well as the substance of all of the relevant facts in the setting of their intended use at the trial. But that this is necessarily true at any stage Rule 33 interrogatories may be served, does not follow.

To ignore the necessity of independent investigation within the Investigatory Component may render misleading or meaningless the Notice Component, and make difficult if not impossible the effective utilization of the Discovery Component. To use the discovery device as a complete substitute for the Investigatory Component, or to expect the Trial Component to completely substitute for investigation, notice or proper discovery would lead to the malfunctioning of the integrated system.[34]

Of course there can be no rigid compartmentalization. There can be no rigidity at all in these broad aspects of the exercise of discretion. Various rights to discovery exist, to be liberally allowed in the interest of justice. In some areas, however, rights are relative. A golfer has the right to use his putter for a drive off the tee as a general proposition; he could not reasonably insist upon doing so if other players were pressing from the rear and the golfers within his own four-some were under serious pressure to complete the game without delay.

Constantly increasing are the number, complexity,[35] comprehensiveness and sophistication of interrogatories filed under Rule 33. There may be discerned a current trend away from the simplicity and practicality which were its original justification and which characterize the operations of The Rules in general.[36]

There seems danger that an insatiable appetite for complete advance revelation and evaluation could lead eventually to the engulfment of the final trial by pretrial procedures. And despite the braking effect of Hickman v. Taylor, a collision course with the foundations of the attorney-client-adversary system could be set again by current demands for ever fuller disclosures. These reflections lead me to suggest that there may be a further limiting dimension to be considered in connection with Rule 33 interrogatories in addition to the problems of privilege, work product and burden. When, however, an attempt is made to find any definite line based upon these broader considerations we certainly "get into deep water", to borrow an expression from Judge Goodrich, speaking for the Circuit Court in Hickman[37]. Suffice it to say that the interrogatories under discussion are on the unacceptable side of any reasonable line. They unduly invade the Trial Component and are thus premature. Most of them also call in varying degrees for the work product of counsel.

---

man & Merchants Bank v. Burin, D.C. S.D.Cal., 11 F.R.D. 142 (1951); United States v. Grinnell Corporation, D.C.R.I., 30 F.R.D. 358 (1962); O'Brien v. Equitable Life Assur. Soc. of United States, D.C.W.D.Mo., 13 F.R.D. 475 (1953); Truck Drivers & Helpers v. Grosshans & Peterson, Inc., D.C.D. Kan., 209 F.Supp. 161 (1962); United States v. Continental Can Company, S.D. N.Y., 22 F.R.D. 241 (1958); Onofrio v. American Beauty Macaroni Co., D.C. W.D.Mo., 11 F.R.D. 181 (1951), and Aktiebolaget Vargos v. Clark, D.C.D.C., 8 F.R.D. 635 (1949).

34. The old theory of pleading invaded what we now understand to be the Discovery Component. Cf. The Revival of Bills of Particulars under the Federal Rules, 71 Harvard Law Review 1473 (1958).

35. Ordinarily the adoption in interrogatories or objections of complicated definition schedules is to be discouraged.

36. "Trial by deposition" also deserves, and is receiving, some second looks.

37. 153 F.2d 212, 221.

This is not to say that any narrower view of the rules is being taken nor any change intended in the established policy of insisting upon full and fair disclosure. Responses must be full, complete, and without evasion.[38] I cannot agree with the plaintiffs that specific inquiry cannot include present claims and contentions as a part of discovery, for these are not the type of work product excluded from discovery. And the factual bases of claims and contentions may be reasonably explored. Substantially the same scope, breadth and depth of discovery should be allowed to all parties and the discovery rights accorded one party against another will presumably be the measure of the latter's discovery.

When discovery has served its legitimate purposes, the massive reach of the final pre-trial conference[39] and trial briefs[40] should adequately complete the process preparatory for trial, providing that reasonable steps have been taken by each side within the investigative and discovery components.

The plaintiffs also specially object to Interrogatory 131, requesting the names of all persons having relevant information whom plaintiffs intend to call at the trial. Disregarding the latter objectional phrase, this inquiry, most feasible in negligence and other relatively simple cases, presents difficulties in cases such as the one before us. There may be literally thousands of persons having relevant information, although much of it might be cumulative or minor. Yet, the rule contemplates that the names of persons known by parties to have relevant information are discoverable,[41] and if this information is to be of any real use it must be made available during the discovery stage. There is no reason why the information should not be reasonably furnished, although reason will permit those possessing merely cumulative and minor information to be described as classes with an indication of the nature of the information possessed where to do otherwise would be wholly impractical. At the final pre-trial conference, as a part of the trial component, the parties will be required to specify the names of all of the witnesses they intend to call. Objection to Interrogatories 14 and 20 should be sustained at this time.

An analogous ruling will apply to Interrogatory No. 13, calling for a description of relevant documentary evidence,[42] although it may be taken to refer to those now known to plaintiffs rather than to those they intend to introduce at the trial.

However, the demand in Interrogatory 132, without reference to relevancy, that there be furnished the names

---

**38.** Perhaps one of the reasons defendants are now pressing so hard is because of the nature of certain answers heretofore received. A specific example cited in the symposium on "The Practical Operation of Federal Discovery", 12 F.R.D. 131, 145 will obviate the necessity of referring to others closer to home. (In one case in another court an interrogatory as to the facts concerning alleged conspiracy in restraint of trade relied upon by plaintiff was answered as follows): "In the absence of information which it is expected will be acquired through motions to produce documents and depositions to be taken, it can be stated that the acts in restraint of trade claimed were all meetings, correspondence, arrangements, deals and other forms of communication showing a unity of purpose and a common design and understanding among defendants."

**39.** At the pre-trial conference arrangements are made for the identification of all documentary evidence and witnesses to be used at the trial.

**40.** I have already indicated my intention to require briefs similar to those recommended by the Co-ordinating Committee for Multiple Litigation in the electrical antitrust cases (recommended pre-trial orders 1, 2 and 3) requiring a detailed statement of evidence to be presented in support or negation of each of the controverted issues. This is considered a part of the trial component and not as a matter of discovery as such.

**41.** 2A Barron & Holtzoff, Fed. Pr. & Proc. § 766 pp. 301–306 (1961); 4 Moore's Fed.Practice ¶26.19 [4] at p. 1247 (1963).

**42.** 4 Moore's Fed. Practice ¶33.22, 2321–2326 (1963).

of all persons from whom plaintiffs, or their officers, employees or agents, have taken or requested statements, is another matter. The detailed pattern of investigation and exploration in and of itself is not a proper subject for discovery.[43] This inquiry is so broad as to call not only for the persons from whom statements have been taken, but from whom they have even been requested, and could cover both written and oral statements. In reference to the definition schedule, by using the word "specify" rather than "identify", defendants have called for the substance of any such oral statements, another direct violation of the principles announced in Hickman.

■ The plaintiffs assert that they should not be required to answer several interrogatories concerning damages separately suffered by them, citing United Mine Workers of America v. Coronodo Coal Co.[44] That case, however, dealt with the propriety of a joint verdict and does not preclude the clear right of the defendants to investigate, discover, and attempt to meet at the trial the possibility of injury to plaintiffs in severalty, or the separate elements of damage that eventually could be represented in a combined verdict.

Other special objections do not require further comment.

Plaintiffs' objection to Interrogatory No. 1 is sustained.

Objection to Interrogatories Nos. 2–11, 15–17, 19, 21–40, 67, 68(b) and 69–80 is sustained without prejudice to the submission within a reasonable time by defendants of amended interrogatories in harmony with the views herein expressed.[45]

Objection to Interrogatory No. 13 is overruled, except that the interrogatory shall be deemed to relate to presently available information without reference to intent at time of trial. Classes of documents, detailed accounts, vouchers and papers bearing upon the case only in aggregate or total may be described by summary or general description with sufficient detail in all cases to enable defendants to determine possible relevancy and to describe the documents for purposes of demand under Rule 34.

Objection to Interrogatories Nos. 41–44, 47–66, Supplemental Interrogatory 8, and Interrogatories Nos. 82–83, 90, 91, 94, 95, 102, 103, 106, 107, 117, 118, 119, 120, 122, 123, 124, 126, 127 and 133 is overruled. Where called for, the breakdown of accounting data between the two plaintiffs will be governed by the spirit of the rules heretofore applied to defendants' answers to interrogatories.

Objection as to Interrogatory No. 128 is overruled.

Objection to Interrogatory No. 129 is overruled with the qualification before stated.

Objection to Interrogatory No. 130 is overruled.

Objection to Interrogatory No. 131 is overruled, except that the persons referred to where their relevant information is remote and general may be described by class with reference to the general substance of their information.

Objection to Interrogatories Nos. 14, 20 and 132 is sustained.

Plaintiffs are granted thirty (30) days from date hereof within which to prepare, serve and file answers to the interrogatories objection to which has been overruled.

43. O'Brien v. Equitable Life Assur. Soc. of United States, W.D.Mo., 13 F.R.D. 475 (1953).

44. 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922).

45. And even supplemental interrogatories are not precluded by a party's good faith attempt in the first instance to limit interrogatories to matters clearly discoverable, since after answers to these any reasons supporting others doubtful upon their face may then more clearly appear.