**In re TRANTEX CORPORATION, Debtor.**

**CREDITORS' COMMITTEE OF TRANTEX CORPORATION, Plaintiff,**

**v.**

**BAYBANK VALLEY TRUST COMPANY, Defendant.**

**Bankruptcy No. 79–1121–G.**

United States Bankruptcy Court, D. Massachusetts.

April 6, 1981.

Peter Nils Baylor, Boston, Mass., for plaintiff.

Michael G. West, J. D., Springfield, Mass., for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO STRIKE

PAUL W. GLENNON, Bankruptcy Judge.

Trantex Corporation ("Trantex") filed an original petition for an arrangement under Chapter XI of the Bankruptcy Act on June 14, 1979. On February 5, 1980, the Creditors' Committee of Trantex (the "Committee") commenced this action against the BayBank Valley Trust Company (the "Bank") to have the Bank's secured claim against Trantex subordinated to the claims of all general creditors. The gravamen of the complaint is that the bank, by reason of its secured position, coerced the directors of Trantex into accepting a management consulting firm ("Pace"), which exercised control over Trantex from September, 1977 until June, 1979, when the Chapter XI petition was filed. The complaint goes on to allege that the Bank, through the instrumentality of Pace, failed to provide good and effective management for Trantex, and caused further loans to be made to Trantex which Trantex's business operation could not support. Finally, the allegation is that the Bank, together with Pace, were working to plan for the closing down of Trantex's plant and liquidating its business, without the approval of the Board. It is the combination of all these actions which the committee argues necessitated the filing of a Chapter XI petition and which, ultimately, led to an adjudication in bankruptcy on April 15, 1980. The committee alleges that all general creditors in this current bankruptcy proceeding have been harmed as a result of the Bank's actions, and that the doctrine of equitable subordination should be applied to subordinate the bank's debt to that of all general creditors.

The allegations of the complaint are serious ones and involve difficult questions of fact and law. The parties have been attempting to conduct discovery in this case, but have run into difficulty. The matter before me now is a Motion to Strike Responses to Interrogatories filed on behalf of the Bank. The Bank propounded its first set of interrogatories to the Committee, and Charles Raffi, Vice-President of Raffi & Swanson, Inc., a creditor of Trantex and a member of the Committee, was designated as the person who would respond for the Committee. I should like to note at the outset, that neither Mr. Raffi nor any other member of the Committee, appears to have

ever been associated with Trantex in any way other than as a creditor of Trantex. Thus, it would not be reasonable to assume that Mr. Raffi would be privy in any general way to business information about the debtor. Further, Mr. Raffi is an officer of one creditor in the entire proceedings. He is responding on behalf of the Creditors' Committee, which itself is a representative body. The Creditors' Committee in a bankruptcy case is established to represent the interests of all general unsecured creditors. However, it represents a class of creditors, not the individual creditors on a case-by-case basis. Its function is to protect the interests of general creditors as a class. In that role, it should be clear, as well, that the Committee cannot reasonably be expected to be privy to all business information of all creditors. It may be argued that as a representative of a class that the Committee should have knowledge about those it represents. The simple fact is that it cannot.

In any bankruptcy proceeding there may be as few as one general creditor or as many as thousands. It hardly seems equitable or sensible to impute to the representative of those creditors knowledge about the business affairs of each and every creditor. The Committee's representative function is limited, i. e. to insure the maximum dividend possible to general unsecured creditors. Its status as plaintiff in this action is for a limited purpose, namely to have determined whether or not general creditors have been harmed by actions of the Bank. The harm can be characterized as the reasonable likelihood of collecting upon their debt, and whether the Bank's actions have reduced that likelihood. This is not a situation where the court could point to a number and say, "Here is how much each creditor has been injured", but rather, it is a question of whether the injury which is a bankruptcy proceeding can be attributed to the Bank. It is important to note that the alleged injury has already occurred, namely the need for the filing of a bankruptcy petition. The damages are not a specific number of dollars, but the fact that general creditors must stand last in line to receive payment. The Committee argues that their position was caused by the Bank, and that equitably, the Bank should be made to stand in line behind all creditors because of their actions.

These remarks are prefatory in nature, but they are important insofar as they apply to the decision below. The Committee objected to a large number of the questions propounded to it in the Bank's Interrogatories. The Bank has now moved to strike the responses as being incomplete and/or evasive. It is important to note that according to Rule 37(a)(3) of the Federal Rules of Civil Procedure, which is made applicable to this case by Bankruptcy Rule 737, incomplete or evasive answers are to be treated as a failure to answer. Accordingly, the proper motion should be one for an order to compel discovery. Since I find nothing in the Committee's responses to Interrogatories which would require the striking of an answer, I shall treat the motion as one to compel discovery under Rule 37(a)(3).

The questions, answers, and objections all fall within three (3) general categories, and for purposes of clarity, I shall discuss each issue in this manner.

## I

■ Questions 7, 9, 10(b)(f), 12(c), 13(a), 14, 15(c), 17(a)(b)(c)(d), 18, 19, 20 and 23 all seek information about "the Debtor", Trantex, and generally follows the pattern of information alleged in the Complaint.

Therefore, it is reasonable to assume that the Committee would have knowledge of the matters requested since they so closely follow that which was alleged in the complaint. Further, I find that the Committee, by Mr. Raffi, responded fully and completely insofar as the content of its answers. The dispute centers around Mr. Raffi's repeated use of such phrases as "The Debtor has informed me", "I have been informed by the Debtor", "According to the Debtor", or "I am informed that".

The Bank rightfully objects to such responses since "the Debtor" is not a real person, but a corporation, which acts only

through its directors, officers and employees or agents. Thus, "the Debtor" cannot be deposed and cannot be made to testify or to appear. The Bank wants to know of whom within "the Debtor" it should ask the appropriate questions. I would agree with the Bank's position insofar as it seeks to clarify from what specific source the Committee obtained its information. The information sought certainly is relevant since it is directly associated with the allegations in the complaint. Further, I am unpersuaded by the Committee's argument that it was not asked to specify individually the source of each response. When information is offered in response to an interrogatory, and the respondent must of necessity rely upon information provided by another in order to respond, it is categorically unfair to state the answer without specifying the source. The communication itself is hearsay, but testimony by the source of the hearsay might be admissible. But, the information, without the source, would not be admissible. To deny the identity of that individual to a party while using information provided by that individual is just the type of problem the Federal Rules of Civil Procedure seek to avoid.

Rule 33(b) sets forth that the scope of discovery upon written interrogatory shall be the same as under Rule 26(b). Rule 26(b)(1) provides,

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... Federal Rules of Civil Procedure, Rule 26

Moreover, even evidence inadmissible at trial must be disclosed if it "appears reasonably calculated to lead to the discovery of admissible evidence". Rule 26(b)(1).

■ Because the Committee is not privy to all information regarding the debtor it must rely on others for its allegations of fact. When substantiating those facts in response to interrogatories, it is incumbent upon the Committee to identify the source of the information. Nor is it sufficient merely to identify the source as "the Debtor". As specifically as is possible, I would require the Committee to identify each and every person associated with Trantex upon whom it relied for the information provided in its answers to Questions 7, 9, 10(b)(f), 12(c), 13(a), 14, 15(c), 17(a)(b)(c)(d), 18, 19, 20 and 23. This is in accordance with the general rule that mutual knowledge of all the facts gathered by parties is essential to proper litigation, and that, accordingly, either party may compel the other to disgorge those facts in its possession. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The facts which constitute the allegations of the complaint may always be inquired into. *Hartsfield v. Gulf Oil Corp.*, 29 F.R.D. 163 (E.D.Pa.1962), 4 Moore's Federal Practice ¶ 26.56[1] (2d Edition 1979). Here, the operative fact in dispute is who within the structure of Trantex is available to substantiate the allegations in the complaint, and the Committee should be required to provide that information, insofar as it is able.

Finally, there is a dispute regarding Question 3 of the Interrogatories, which reads, in pertinent part,

> [S]tate the name an address of each agent, servant and/or employee of Plaintiff with whom you conferred and set forth in detail the dates of, substance of and parties to each such conference.

■ The Committee objects to this question on various grounds, including that it relates to privileged work-product, it is overbroad, unduly burdensome, and that it is irrelevant and unlikely to lead to the discovery of admissable evidence. First, let me say that it appears through the Bank's interrogatories that the Bank is treating this action as if the plaintiff were Trantex. In fact, the creditors' committee is the plaintiff. It has no "employees" or "agents", other than its counsel. Further, the *substance* of any conversations between the interrogated party and any agent, servant or employee is likely not to be relevant to the proceeding. 4 Moore's Federal Practice ¶ 26.56[1] (2d Edition 1979); see also, *Transmirra Product Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572 (S.D.N.Y.1960). An inquiry such as with whom the plaintiff

has spoken who would have knowledge of relevant facts might be allowable, *St. Paul Fire & Marine Insurance Co. v. King*, 45 F.R.D. 521 (W.D.Okl.1968), but a question which goes beyond those known to the interrogated party to have knowledge and beyond categories likely to have knowledge concerning the complaint, and which extends to those "contacted or interviewed" is likely to be objectionable on the basis of the work-product doctrine. 4 Moore's Federal Practice ¶ 26.57[2] (2d Edition 1979); see also, *Uinta Oil Refining Co. v. Continental Oil Co.*, 226 F.Supp. 495 (D.Utah 1964). Such a request is usually an effort to discover the pattern of the investigation and exploration by the interrogated party. *St. Paul Fire & Marine*, supra. Therefore, I would sustain the Committee's objection to Question 3, insofar as it is overbroad. In accordance with the rule in *St. Paul Fire & Marine*, however, I would order the Committee to disclose those persons amongst the Committee with whom it has conferred who are likely to have knowledge of relevant facts. I would deny the Bank's Motion insofar as it requests the date, time or substance of conversations in Question 3.

## II

■ Questions 4, 5, 6 and 11 of the Bank's Interrogatories deal with information about the general creditors of Trantex. Question 4 reads,

> Please state the name and address of each and every creditor on the Creditors' Committee and the name of each and every creditor that voted to bring this action.

The Committee objects to this question to the extent it seeks the names of each creditor that voted to bring this action, and I would sustain that objection, as the information sought is wholly irrelevant. See, *Schultz v. Tony Goodrich's Television City, Inc.*, 13 F.R.Serv.2d 33.321 (Case 6) (D.R.I. 1970).

Questions 5, 6, and 11 seek information regarding the creditors of Trantex. Question 5 seeks names and addresses of each creditor who claims to be injured by the Bank's activities, Question 6 seeks information regarding the business of each creditor in this proceeding, and Question 11 seeks information regarding the Debtor's arrearage to creditors at a given point in time.

■ The Committee has objected to these questions on the grounds that they are overbroad, unduly burdensome, irrelevant, and unlikely to lead to the discovery of admissible evidence. The Bank, on the other hand, argues generally that as a representative of a class of creditors, the Committee is responsible for making proper inquiry of everyone it represents. I am unpersuaded by the Bank's argument that the Committee should be responsible for all information concerning the creditors it represents. First, my prefatory remarks make it clear that as a practical matter, it doesn't make sense. Moreover, I fail to see the relevance of the information sought in Question 6. That Question seeks detailed information about the business of each and every creditor, their transactions with Trantex, the amount owed to each creditor prior to control being given to PACE, and the amount owed at the time of the filing of the debtor's bankruptcy petition, and all sorts of other specific and detailed information which would require extensive investigation on the part of the committee. As I said earlier, this case does not involve issues of "before and after", insofar as a determination of the amounts owed to creditors by Trantex. Here the Committee seeks to have the Bank divested of its secured position, and therefore, removed from an advantageous position over unsecured creditors. The situation can be likened somewhat to that of a stockholder's derivative suit. The corporation, there, is made up of a class of equity holders, all of whom are alleged to have been injured by the actions of the officers or directors of the corporation. However it would not be relevant in that case to inquire into the business interests of each and every stockholder, to determine if they have suffered a change in position. If there is harm as to one, there is

harm as to all. This is not a case where Rule 23 of the Federal Rules would be applicable regarding class actions. The requirements there are established to insure that there was uniformity of harm among the class members. Here, the class members do not have to "qualify", as such. They merely must be creditors, and they must be unsecured. Therefore, I would find, as well, that the matters sought in Questions 6 & 11 are irrelevant, unduly burdensome and overly broad. Finally, whatever relevance the information may have is outweighed by the burdens that would be imposed upon the Committee in answering. *Burroughs v. Warner Bros. Pictures, Inc.*, 14 F.R.D. 165 (D.Mass.1953); *Barnett v. Sears, Roebuck & Co.*, 80 F.R.D. 662 (W.D.Okl.1978).

Finally, as to Question 5, which reads,

Please state the name and address of each and every creditor who claims to be injured by the alleged activities of the Defendant Bank.

I think it is sufficient to state that for the same reasons as I have noted above, this information is irrelevant and burdensome. Further, the information can be obtained from other sources. I find the Committee's response that it "believes all creditors have been injured by the activities of the Defendant Bank", to be sufficient. Therefore, I would deny the Bank's motion to compel as to Questions 4, 5, 6 and 11, and accordingly, I would sustain the objections of the Committee therein.

### III

The last area of dispute centers around Questions 15(b)(c), 21 and 22, which seek information regarding Trantex's financial status before and after PACE and its dealings with the Bank in certain loan transactions. As for Question 15(c), I have already determined that the Committee must disclose the source of its information, and I believe that response is sufficient in all other respects. Question 15(b) reads,

With respect to your allegation that there were "increased borrowings from the Defendant Bank, "please state:

(b) the sum of said "increased borrowings" including the dates thereof.

Questions 21 and 22 request information about the financial status of Trantex before and after PACE took control.

As I have noted earlier, and throughout this memorandum, the Committee is not the debtor, here, and cannot be held accountable for information regarding the financial status of the debtor at any given time, except insofar as it might have alluded to such information in its Complaint. Therefore, I would sustain the Committee's objections to Questions 21 and 22, but would rule in favor of the Bank as to Question 15(b). The Bank argues that Rule 33(c) requires that the records from which the answer may be derived be specified. However, a close look at Rule 33(c) indicates that it only applies to the business records of a party upon whom the interrogatory has been served. The Committee has no business records, and the information sought in Questions 21 and 22 can only be found in the business records of Trantex, over which the Committee has no control. Therefore, I would deny the Bank's motion on that ground and sustain the Committee's objections as to Questions 21 and 22. However, I will grant the Bank's Motion as to Question 15(b) since the matters sought are directly related to an allegation of the complaint, for which the Committee can be held to have knowledge of. Therefore, I will deny the Committee's objections to Question 15(b) and grant the Bank's Motion.