**AMERICAN FLORAL SERVICES, INC., Plaintiff,**

v.

**FLORISTS' TRANSWORLD DELIVERY ASSOCIATION and Teleflora, Inc., Defendants.**

**No. 84 C 1824.**

United States District Court, N.D. Illinois, E.D.

July 15, 1985.

Peter S. Lubin, McConnell & Associates, Chicago, Ill., for plaintiff.

William G. Schopf, Jr., Charles S. Bergen, Reuben & Proctor, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

American Floral Services ("AFS") has sued Florists' Transworld Delivery Association ("FTD") and Teleflora, Inc. ("Teleflora"), alleging antitrust law violations through defendants' enforcement of membership rules that affect the use of other floral clearinghouses by FTD and Teleflora members. For discovery purposes the case was referred to Magistrate Joan Lefkow, who granted Teleflora's motion under Fed. R.Civ.P. ("Rule") 37 to compel the identification of two witnesses interviewed by AFS's counsel about Teleflora's enforcement procedures. AFS has now moved for reconsideration of the Magistrate's ruling under Rule 72(a). For the reasons stated in this memorandum opinion and order, that motion is denied and Magistrate Lefkow's ruling is affirmed.

*Facts*

AFS, FTD and Teleflora are competitors in the floral clearinghouse business. AFS claims FTD and Teleflora, who control the largest share of that market, prevented member florists from using the services of other floral clearinghouses and also fixed prices. That alleged anticompetitive conduct is said to have been accomplished in part by Teleflora's enforcement of its Membership Obligation No. 2:

> Any florist sending or receiving a wire order that specifies an exclusive Teleflora holiday promotion, keepsake product or bouquet from the counter selection guide, must credit the transaction to Teleflora's clearinghouse. Knowingly crediting any other wire service for sales generated by Teleflora programs or national advertising is grounds for disciplinary action including potential dismissal from Teleflora.

In response to AFS's discovery request, Teleflora produced documents and interrogatory answers reflecting enforcement of Membership Obligation No. 2 against only one florist, Amlings Flowerland. Believing Teleflora had withheld documents and information about its enforcement of Membership Obligation No. 2, AFS interviewed two Teleflora employees who provided information tending to confirm AFS's suspicions. At a March 19, 1985 discovery conference pursuant to this District Court's General Rule 12(d), AFS's counsel told Teleflora's counsel of its suspicions and its interviews with the potential witnesses. Teleflora in turn demanded that AFS identify the interviewees because they were individuals having knowledge of facts material to the lawsuit. AFS refused to identify the particular individuals it had interviewed, classifying that information as "attorney work product." Instead it supplied Teleflora with the names of Teleflora unit presidents, field representatives and regional representatives. They, AFS asserted, in addition to persons identified in response to prior Teleflora discovery requests, all had knowledge of Teleflora's

enforcement of Membership Obligation No. 2.[1]

Unsatisfied with AFS's response, Teleflora filed a Rule 37 motion to compel identification of the two employees interviewed. Magistrate Lefkow granted that motion, apparently because the class of persons identified as having knowledge of Teleflora's enforcement procedures was so large (some 2000 in number according to Teleflora, but "only" 200 according to AFS). In seeking reconsideration of that ruling AFS argues the identity of the interviewees is protected from discovery by the attorney work product doctrine (the "Doctrine") articulated in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

### Attorney Work Product Analysis

■ Discovery under the Rules changed the entire concept of litigation from a cards-close-to-the-vest approach to an open-deck policy. It seeks to facilitate open and evenhanded development of the facts underlying a dispute, so that justice may be delivered on the merits and not shaped by surprise or like tactical stratagems. Only tangible (Rule 26(b)(3)) and intangible (*Hickman*) materials prepared by an attorney with an eye toward litigation, and revealing his or her mental processes, are protected from disclosure. *Hickman, id.* at 510–11, 67 S.Ct. at 393–94 explains the rationale behind the Doctrine:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

And as *Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.1985) points out, the Doctrine also serves to guard:

> the adversary system's interest...in ensuring that each side relies on its own wits in preparing their respective cases.

■ Though the issue is not free from doubt, application of those principles to the present circumstances weighs against work product protection for the identities of the interviewees. As Teleflora argues, the identity of witnesses having knowledge of relevant facts is discoverable information. *Besly-Welles Corp. v. Balax, Inc.,* 43 F.R.D. 368, 371 (E.D.Wis.1968). It is not enough for AFS to say it has already provided Teleflora with the names of persons having knowledge of how Membership Obligation No. 2 was enforced—names gathered from its examination and analysis of Teleflora's own prior discovery responses.

True enough, what Teleflora now seeks is the fruit of AFS's further investigation into matters potentially within the knowledge and control of Teleflora. But it is important to stress "potentially," for in real world terms Teleflora (that is, its litigation team) obviously does not automatically have all the knowledge lodged somewhere in Teleflora the legal entity. Teleflora's ability to distill the 200-person list, as tendered by AFS, into the two names of

---

**1.** AFS's determination that the unit presidents, field representatives and regional representatives were familiar with Teleflora's enforcement program was apparently based on information garnered from Teleflora's own discovery responses:

1. a January 7, 1982 letter from Teleflora's Executive Vice President of Marketing Lynda Resnick ("Resnick") to all Teleflora unit presidents outlining their role in the enforcement of Membership Obligation No. 2 (R.Mem.Ex. A.);

2. a January 19, 1983 office memorandum from Resnick to all regional managers, field service directors and department heads outlining their role in the enforcement program (R.Mem.Ex. B); and

3. Resnick's deposition testimony that unit presidents bore some of the responsibility for monitoring compliance with Teleflora membership rules (R.Mem.Ex. C).

persons with allegedly inculpatory information smacks of a needle-in-haystack search: time-consuming, wasteful and expensive. And that process should not be forced on Teleflora just because the alternative of disclosure makes Teleflora's job easier at AFS's expense.[2] After all *every* disclosure in the course of discovery does just that to some extent—that is the necessary result of the policy judgment, made by the Rules' draftsmen, that the "fox-hunt" theory of litigation was no longer acceptable.

This situation may profitably be contrasted with a superficially similar one in which this Court recently came to the opposite conclusion. In *Board of Education of Evanston Township High School District No. 202 v. Admiral Heating and Ventilating, Inc.,* 104 F.R.D. 23, 32 (N.D.Ill.1984) (emphasis in original) this Court said:

> [Plaintiffs'] legitimate concern is with the identification of persons who have *knowledge* "concerning meetings, discussions or communications among officers or employees of any competitors with regard to piping construction bids, pricing, customers or territories." To go beyond that—to tell plaintiffs whom defendants have interviewed, where and when such interviews took place and whether or not a record was made—is to give plaintiffs no more knowledge of substantive relevant facts, but rather to afford them the potential for significant insights into the defense lawyers' preparation of their case (and thus their mental processes). That possibility is enhanced by the broad scope of disclosure otherwise sanctioned in this opinion.

In that case the disclosure of all persons interviewed, when coupled with the equally inevitable disclosure of which of them were anticipated witnesses (and therefore which were not), would teach the opponent just which interviewees' information was viewed as gold and which as dross. It would teach the shape of the discovered party's case as surely as the shape of a container teaches the shape of the gas within. It would reveal the conceptual sifting of relevant from irrelevant facts, as spoken of in the quoted passage from *Hickman.* That is why this Court spoke in *Board of Education* of "afford[ing] [one party] the potential for significant insights into the [other party's] lawyers' preparation of their case (and thus their mental processes)." See also *Uinta Oil Refining Co. v. Continental Oil Co.,* 226 F.Supp. 495, 505–06 (D.Utah 1964).

No such "significant insights" are afforded by simply telling Teleflora *who* has assertedly adverse information. Of course Teleflora already knows the nature of AFS's claim, and the mere identification of persons who know facts bearing on that claim tells Teleflora nothing new about the mental processes of AFS's lawyers. *State of Illinois v. Borg, Inc.,* 95 F.R.D. 7, 8–9 (N.D.Ill.1981).

That conclusion is only reinforced by analogy to the rules governing document production. Under Rule 34(a) a party responding to a document request may produce documents "as they are kept in the usual course of business," leaving it to the requesting party to sort out those relevant to his or her case. There can be little doubt that forced disclosure of the selection made by the requesting party's lawyer from among those documents, necessarily reflecting his or her assessment of what is and is not important in the case, would run afoul of (and would be precluded by) the Doctrine. See *Sporck,* 759 F.2d at 316. When the opposing party thus learns about the lawyer's sorting of wheat from chaff, the party obtains "disclosure of the mental impressions, conclusions, opinions, or legal theories of [the] attorney . . . concerning the

---

**2.** It should be pointed out that the form of Final Pretrial Order drafted by the writer of this opinion as chairman of this District Court judges' committee on the subject, and just approved last month as the uniform form for this District Court (via General Rule 5.00), requires each litigant to list its witnesses, dividing them into those who will be called and those who may be. If AFS were not to provide the names now and were later to list them in the Final Pretrial Order, Teleflora would surely be given leave to reopen discovery to depose those individuals then. No goal save delay and inconvenience would be served.

litigation."[3] But here the separation of the two interviewees from the universe of 2000 (or even 200) potential witnesses is wheat-from-chaff information of a very different kind: It gives the identity of the few people in that large group who assertedly know of Teleflora's misconduct, but as to AFS's *theory* of such misconduct it reveals nothing other than the tautology that information showing improper use of Membership Obligation No. 2 is relevant to this lawsuit.

While the federal discovery rules contemplate an unrestrained exchange of facts, it is true Teleflora's request in this instance smacks a little of riding on the coattails of AFS's investigative skill or good luck. But the Doctrine was not devised to protect all work by attorneys in the global sense—it was focused in the more precise way this opinion reflects. Moreover whatever doubts such equitable considerations may raise are not enough to displace Magistrate Lefkow's ruling, given the standard of review established by Rule 72(a) in conformity to 28 U.S.C. § 636(b)(1)(A):

> The district judge to whom the case is assigned shall consider objections made by the parties, provided they are served and filed within 10 days after the entry of the order, and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law.

AFS has impermissibly approached this problem as though this Court were to deal with it de novo. In light of the case law and the policies embodied in the federal discovery rules, Magistrate Lefkow's ruling would likely stand up under such de novo review, but it certainly does under the "clearly erroneous or contrary to law" standard of Rule 72(a).

### Conclusion

AFS's motion for reconsideration of Magistrate Lefkow's ruling is denied. It is

---

**3.** This is the familiar language of Rule 26(b)(3), which bespeaks the same concerns as are exemplified by the Doctrine.

ordered to identify the two witnesses to Teleflora on or before July 18, 1985.