**LINCOLN GATEWAY REALTY CO.,**
Plaintiff,

v.

**CARRI-CRAFT, INC., et al., Defendants.**

**Civ. A. No. 18399-3.**

United States District Court,
W. D. Missouri, W. D.

Jan. 26, 1971.

304

Glenn McCann, Knipmeyer, McCann & Millert, Kansas City, Mo., for plaintiff.

W. A. Denny, Frisch, Dudek, Slattery & Denny, Milwaukee, Wis., and James H. Ottman, and Robert E. Northrip, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, Mo., for defendant Carri-Craft, Inc.

Larry L. McMullen, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for defendants Fuqua Industries, Inc. and Varco-Pruden, Inc.

ORDER SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS TO DEFENDANT CARRI–CRAFT'S INTERROGATORIES; DENYING PLAINTIFF'S MOTION "FOR ORDER COMPELLING DEFENDANT CARRI–CRAFT, INC. TO REFRAIN FROM HARASSING, ANNOYING AND EXPENSIVE DISCOVERY AND TO AWARD PLAINTIFF EXPENSES INCURRED IN ANSWERING DEFENDANT CARRI–CRAFT'S FOURTH SET OF INTERROGATORIES": GRANTING MOTION FOR EXTENSION OF DISCOVERY: AND DENYING "APPLI-

CATION OF DEFENDANTS FUQUA INDUSTRIES, INC. AND VARCO–PRUDEN, INC. FOR ORDER DIRECTING SUMMONS TO ISSUE" AND DENYING DEFENDANTS FUQUA INDUSTRIES, INC., AND VARCO–PRUDEN, INC., LEAVE TO FILE THIRD–PARTY COMPLAINT

WILLIAM H. BECKER, Judge.

This is an action under the diversity statute, Section 1332, Title 28, United States Code, in which plaintiff alleges that it purchased a boat defectively manufactured and inspected by defendant Carri-Craft, Inc., with the result that the carburetor leaked and the boat was destroyed by fire and plaintiff was thereby damaged in the sum of $38,000. On November 19, 1970, with leave of Court, plaintiff was granted leave to file an amended complaint adding Fuqua Industries, Inc., and Varco-Pruden, Inc., as parties defendant herein. Therein, it was pertinently alleged as follows:

"That prior to March 1968, Carri-Craft, a division of Wisconsin Tank Tainer, Inc., manufactured and placed upon the market a 54 foot Carri-Craft Boat No. CC 613; that thereafter Wisconsin Tank Tainer, Inc. 'spun off' and became known as Pruden Products Company, Inc., a Wisconsin corporation, and Carri-Craft, Inc.; that Pruden Products Company, Inc. was a subsidiary of defendant Fuqua Industries, Inc. and was its agent and alter ego; that said Pruden Products Company, Inc. and defendant Carri-Craft, Inc. assumed the liabilities of Wisconsin Tank Tainer, Inc., including but not limited to liability for the defective manufacture of Carri-Craft Cruiser No. CC 613; that thereafter, Pruden Products Company, Inc. was merged with Varco Steel, Inc., a Delaware Corporation, into defendant Varco-Pruden, Inc.; that said Varco Steel, Inc. and Varco-Pruden, Inc. are subsidiaries and the alter ego of de-

fendant Fuqua Industries, Inc.; that as a result of said mergers Varco-Pruden, Inc. assumed liability for the defective manufacture of Carri-Craft Cruiser No. CC 613; that defendant Fuqua Industries, Inc., as the parent corporation of Varco-Pruden, Inc., and as the motivating corporation in said spinoffs and mergers, assumed liability for defective manufacture of Carri-Craft Cruiser No. CC 613."

After obtaining an extension of time by order of Court, defendants Fuqua Industries, Inc., ("Fuqua" hereinafter) and Varco-Pruden, Inc., ("Varco-Pruden" hereinafter) filed their joint answer to the amended complaint on January 8, 1971. These defendants also submitted their proposed third-party complaint purporting to add Wisconsin tank Tainer, Inc., a/k/a B.B.B. and S., Inc., as a third-party defendant, together with an application for an order requiring summons to issue on that corporation's last officers and directors. In his letter of January 12, 1971, to the Court, counsel for defendants Fuqua and Varco-Pruden states his reliance on the provisions of Rule 14, F.R.Civ.P., which permit the filing of a third-party complaint without leave of court within 10 days of the filing by third-party plaintiff of his original answer. Counsel states as follows:

"It appears from Rule 14 that leave is not necessary for the third party complaint but as service is required on representatives of the third party defendant who are not found within the state we have prepared and filed with the Civil Clerk an Application and Suggestions for an order authorizing service under Rule 4(e)."

Whether to permit the bringing in and retaining of a third-party defendant, however, is a matter within the sound discretion of the Court. If it can be considered that defendants' submitting the proposed third-party complaint to the Clerk on January 8, 1971, constitut-

ed a filing of the third-party complaint at a time when leave was not necessary, the Court may still strike or dismiss the third-party complaint if it would only delay trial and otherwise complicate the litigation. See Rule 14, F.R.Civ.P., and Advisory Committee Notes on 1963 Amendment and authorities therein cited. In their proposed third-party complaint, defendants Fuqua and Varco-Pruden, base the liability to them of the Wisconsin Tanktainer, Inc., on two grounds:

(1) "Third-party plaintiffs did not manufacture or sell the aforesaid boat which allegedly caused plaintiff's alleged damage but in fact the aforesaid boat was manufactured and sold by third-party defendant."

(2) "If third-party plaintiffs are ultimately adjudged to be liable or responsible in law to plaintiff Lincoln Gateway Realty Co., which is denied, then the third-party defendant Wisconsin Tank Tainer, Inc., a/k/a B.B.B. and S., Inc., is in turn liable and responsible to third-party plaintiffs because it did falsely and fraudulently represent to third-party plaintiffs that the aforesaid liabilities had been passed to and assumed by Carri-Craft, Inc., when in truth and in fact the business and assets acquired by third-party plaintiffs from third-party defendant were not free and clear of said liability and said liability had not been assumed by Carri-Craft, Inc."

The controlling provisions of Rule 14, F.R.Civ.P., are that the third-party practice is available to a third-party plaintiff to bring in a party "who is or may be liable to him for all or part of the plaintiff's claim against him." The first ground above relied on by Fuqua and Varco-Pruden does not state any liability to them, but rather states liability to the plaintiff. Therefore, in this case, third-party practice cannot be predicated on the ground of the third-party defendant's direct liability to plaintiff.

"There must, of course, be some showing that under the applicable law the third party *may* be liable to the defendant." 3 Moore's Federal Practice ¶ 14.10, p. 554. No possible liability to third-party plaintiffs is stated by the first claim in the proposed third-party complaint. The second ground—that of fraud of Wisconsin Tank Tainer, Inc. ("Wisconsin Tanktainer" hereinafter)—, whether or not it states liability to defendants Fuqua and Varco-Pruden for the alleged misrepresentations, has no relation to the claim of plaintiff. "[A]n entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim." United States v. Joe Grasso & Son, Inc. (C.A.5) 380 F.2d 749, 751. That case also states as follows:

"The question whether a defendant's demand presents an appropriate occasion for the use of impleader or else constitutes a separate claim has been resolved consistently by permitting impleader only in cases where the third party's liability was in some way derivative of the outcome of the main claim. In most such cases it has been held that for impleader to be available the third party defendant must be 'liable *secondarily* to the original defendant in the event that the latter is held liable to the plaintiff.' (emphasis added) Holtzoff, Entry of Additional Parties in a Civil Action, 31 F.R.D. 101, 106 (1962). Accord, Cass v. Brown, 41 F.R.D. 284, 286 (D.Colo.1966); National Fire Ins. Co. v. Daniel J. Keating Co., 35 F.R.D. 137, 139 (W.D.Pa.1964). Stating the same principle in different words, other authorities declare that the third party must necessarily be *liable over* to the defendant for all or part of the plaintiff's recovery, 1A Barron & Holtzoff, Federal Practice and Proc. Sec. 426, at 664–669, or that the defendant must attempt to *pass on* to the

third party all or part of the liability asserted against the defendant, 3 Moore's para. 14.07, at 512 * * *. Whichever expression is preferred, it is clear that impleader under Rule 14 requires that the liability of the third party be dependent upon the outcome of the main claim." (emphasis in original.)

But, in the case at bar, wherein the prospective third-party plaintiffs wish to inject the new and complex issue of fraud into the third-party complaint, its possible claim against Wisconsin Tank Tainer cannot be deemed dependent upon the outcome of the main claim. Clearly, the permitting of such a third party complaint would frustrate the purpose of Rule 14, F.R.Civ.P., which is to avoid circuity and multiplicity of actions. See Noland Co. v. Graver Tank & Mfg. Co. (C.A.4) 301 F.2d 43. Although third-party plaintiffs raise certain affirmative defenses in their answer to the amended complaint of plaintiff, fraud of Wisconsin Tanktainer is not one of them. Clearly, the claim of Fuqua and Varco-Pruden does not fall within the single "group or aggregate of operative facts" involved in the principal claim herein. Therefore, the maintaining of the third-party claim herein is improper. Because the proposed third-party complaint does not actually bear a file stamp and because Fuqua and Varco-Pruden have applied for an order that service of summons be made because Rule 14 states that "The third-party plaintiff need not obtain leave to make the service if he files the third-party complaint not later than 10 days after he serves his original answer," the complaint purporting to implead Wisconsin Tank Tainer will be treated as not filed and leave will be denied to file it and the application for an order to issue summons on its last officers and directors will accordingly be denied. The result would be the same, however, if the complaint of impleader were deemed filed, under the power of the Court to strike or dismiss it.

There are some outstanding objections to interrogatories of defendant Carri-Craft made by plaintiff. Plaintiff objects to defendant Carri-Craft's interrogatories, 89, 91, 92, 96, 97, 98, 100, 101, 102, 103 and 104, on the grounds that they are repetitive of prior interrogatories, and to interrogatories 93 and 94 on the grounds that they call for trial preparation materials without any showing of substantial need therefor.

■ It is clear that the information asked for in interrogatories 93 and 94 is within the scope of discovery. Interrogatory 93, with respect to certain statements taken by plaintiff, which have been identified in a previous interrogatory, asks for (a) the date the statement was taken and (b) the identity of the person who obtained the statement from the witness and the identity of his or her employer at the time the statement was taken. Interrogatory 94, with respect to each of those individuals who were identified in response to a prior interrogatory as being on plaintiff's boat (a) his or her last known street address, (b) his or her last known mailing address, and (c) his or her age or approximate age as of June 1968. Plaintiff contends that the interrogatories call for trial preparation materials within the meaning of Rule 26(b), F.R.Civ.P., without the showing of substantial need required therein. But, in that rule, trial preparation materials are described as "documents and tangible things." Clearly, defendant does not inquire into the contents of any statements obtained by plaintiff in preparation for trial. The information asked for is otherwise within the scope of discovery. The objections must accordingly be overruled.

■ Plaintiff next objects that interrogatory no. 89, requesting the entries "made in Plaintiff's books and records subsequent to execution of said Exhibit 'A' which reflect the purchase of Carri-

Craft boat No. CC 613 by Plaintiff," is repetitious of interrogatories 21 and 23 and answers thereto previously made. Interrogatory 21 states:

"For each entry made in plaintiff's books of account with respect to Carri-Craft boat No. CC 613 state in detail the nature of the entry, the name of the party making the entry and the date the entry was made."

Interrogatory 23 inquires as follows:

"For each payment made by plaintiff with respect to its purchase of Carri-Craft boat No. CC 613 state the date of such payment, the identity of the payee, the total amount of such payment, the amount of payment which represented principal being paid on the purchase of the boat and the amount of the payment representing interest."

Plaintiff's answer to interrogatory 21 lists the dates of certain payments in the year 1968 made by it to Lake Park Recreation, Inc., and to the First National Bank of Camdenton, Missouri. The answer to interrogatory 23 is:

"See answer 21. Plaintiff is unable to state the exact amount to principal and to interest but defendant should have this information or it can be obtained from the First National Bank of Camdenton, Missouri."

Thus, neither the answer to interrogatory 21 nor that to interrogatory 23 includes the material called for by interrogatory 89, the full entries in plaintiff's books quoted in detail. Defendant Carri-Craft was well within the scope of discovery in requesting the information, in the absence of any other objection by plaintiff. The objection will be overruled. This interrogatory may be answered by submitting a copy of the book entries referred to at the option of the plaintiff.

Interrogatory 91 requests the "best recollection of Plaintiff as to the date or dates on which Mr. Gottner observed ei- ther overheating of the engines, leaking oil or leaking bilges." Plaintiff objects that this repeats interrogatory 83, which had been served and answered previously and to which plaintiff answered that it did not recall the "exact dates." Interrogatory 93 asks for the "best recollection." Clearly, this does not repeat interrogatory no. 83. The objection must be overruled.

Interrogatory 92 asks the name of each lawsuit in which John Winfrey has testified, its number, the Court in which filed, the name of the city in which tried and the identity of the party on whose behalf he testified. Plaintiff objects that this repeats interrogatory 68(f) of a previous set which indeed asks for the same information. Plaintiff, however, has answered the interrogatory 68(f), "Plaintiff does not know." Winfrey, however, has been identified by plaintiff's prior answer to interrogatory no. 40 as the person who examined the engines of the boat on behalf of plaintiff or its insurance company and who last possessed the engines. Under ordinary circumstances, it would appear that this information is available to plaintiff and that plaintiff is under a duty to make discovery with respect to it. The objection will be overruled. The answer may be limited to appearances of Winfrey as an expert witness in the last 10 years.

Interrogatory 96 asks "what facts do you contend support the allegation that 'gasoline fuel lines leading to one of the engines were defectively secured to the carburetor'?" Interrogatory 66 and interrogatory 67 are claimed by plaintiff to have been prior duplicates of this interrogatory. Interrogatory 66 does indeed request the facts known to plaintiff to support this allegation. But plaintiff's answer to the interrogatory only states:

"Physical evidence and opinion of John Winfrey, expert witness, based on an inspection and examination of engines."

Interrogatory 67 asks how plaintiff determined the alleged defect. The answer is:

"Examination and inspection and examination by its expert Winfrey."

In answer to neither interrogatory 66 nor 67, however, does plaintiff state its factual contentions supporting the allegation, although 67 is fairly answered. Factual contentions are discoverable through interrogatories. Hughes v. Groves (W.D.Mo.) 47 F.R.D. 52. Therefore, the objection will be overruled.

Interrogatory 97 is claimed to be a repeat of 77(b). It asks "at what date or point in time do you contend a gasoline fuel line or lines first became defectively secured to the carburetor?" Interrogatory 77(b) inquires into the substance of the facts to which John Winfrey is expected to testify. The answer to that interrogatory is:

"Defendant defectively manufactured Carri-Craft boat No. CC 613 in that gasoline fuel lines leading to one of the engines were defectively secured to the carburetor, became loose and leaked gasoline, and set fire to the boat destroying it."

It is apparent, however, that interrogatory 97, in calling for a "date or point in time" requests a more precise answer than during manufacture. The same reasoning applies to interrogatory 98, which asks explicitly the first date on which the fuel lines "became loose." Plaintiff should answer to the best of its ability. The objections to interrogatories 97 and 98 will be overruled.

Interrogatory 100 is complained of as being a repetition of interrogatory 34. It asks for the number of times the engine had been started on June 21, 1968, prior to 1:30 p.m.; the total number of hours and minutes it had been operated on June 21, 1968, prior to 1:30 p.m.; the temperature of the engine as observed at various times during the day of June 21, 1968; and the identity of the individuals who made the observations. Plaintiff contends that the answers to this interrogatory were contained in its answer to prior interrogatory 34, calling for reports, statements, memorandums or testimony respecting the "casualty described in plaintiff's complaint." The answer to that interrogatory is:

"Stephen R. Gottner, son of Raymond Gottner, now serving with the Armed Forces of the United States in Viet Nam was operating the boat on the date of the fire and is the only person who can supply the answer to this interrogatory. He is now unavailable but plaintiff will attempt to obtain the information upon his return from Viet Nam, the date being unknown at this time."

Under the circumstances, however, the interrogatory should be viewed as asking for the factual contentions of the plaintiff, in order to facilitate discovery in the absence of Stephen R. Gottner. Plaintiff does not state that it is unable to communicate with the Gottners. Plaintiff may communicate with Stephen R. Gottner in writing or otherwise to obtain this information, or it may state its inability to do so in a motion for a protective order with respect to this interrogatory. Therefore, the objection will be overruled. The same reasoning applies to plaintiff's objections to interrogatories 101, 102, 103 and 104, requesting, respectively, the same information for the starboard main propulsion engine; observations respecting oil pressure in the port engine; observations respecting oil pressure for the starboard engine; and observations respecting each of the engine compartment bilges on June 21, 1968.

■ Interrogatory 99, finally, inquires into the factual contentions supporting the claim for $38,000 damages, which plaintiff contends have been sufficiently stated in response to interrogatories 69 and 70, previously answered.

Interrogatory 69 does indeed make the same inquiry. It is answered as follows:

"$38,000.00 was the reasonable market value of Carri-Craft boat No. CC 613 before the fire and its value after the fire was zero since it was a total loss."

The answer to interrogatory 70, inquiring into the facts supporting the contention of reasonable value and the sum plaintiff contends it agreed to pay for the boat, reads as follows:

"(a) Carri-Craft boat No. CC 613 had only a few hours of use prior to the loss; therefore the market value of the boat immediately prior to the loss was about $38,000.00, its sale price; (b) $38,000."

Market value, however, is the highest sum available for the product on the open market. The answer to interrogatory 70 states plaintiff's factual contentions supporting the contention that $38,000 was the market value of the boat. This is conclusorily stated in the answers to interrogatory 69. In view of the answer to interrogatory 70, the objection to interrogatory 99 will be sustained.

Because few of plaintiff's objections had merit, its motion to impose sanctions on defendant Carri-Craft for asking burdensome questions must be denied.

The final matter for resolution in this order is the motion of defendants Fuqua and Varco-Pruden for an extension of discovery. Their request is that the discovery in this case be extended from January 27, 1971, to March 15, 1971. Counsel for those parties report to the Court that all other parties agree to the extension. The following is stated in support of the motion:

"These defendants have just been added to this litigation. These defendants' answer was filed on January 8, 1971. It was necessary for these defendants to bring a third-party action against Wisconsin Tank Tainer, Inc. That action was filed the same day. That action is not yet at issue. It will probably not be at issue by January 27, 1971.

"The Court file indicates that the present discovery cut-off date is January 27, 1971. In light of the fact that these defendants have only recently been added to the litigation and in light of the fact that because of the different corporate entities involved, (in many different states) it will not be possible for these defendants to complete discovery within the time presently set by this Court."

The third-party claim, however, will not be tried in this case, pursuant to the conclusions made above and for the reasons given in support thereof. But the file itself shows good cause for an extension of discovery. By a prior order of the Court, the staying of depositions has been ordered "until they are reset by further notice filed by defendant after the answer or other pleadings to the complaint of additional defendants, or the entry of appearance of counsel for them, or after their default therein." Further, it appears that plaintiff will need some time to answer those interrogatories with respect to which objections are herein overruled, particularly those for which Stephen R. Gottner is the source of information. The motion for an extension of time in which to complete discovery to March 15, 1971, will therefore be granted.