**COMMONWEALTH OF MASSACHUSETTS,**

v.

**FIRST NATIONAL SUPERMARKETS, INC., Stop and Shop Companies, Inc., Waldbaums, Inc.**

**Civ. A. No. 85–3835–K.**

United States District Court, D. Massachusetts.

Sept. 15, 1986.

Dorothy Anderson, Margaret Zaleski, Asst. Attys. Gen., Antitrust Div., Public Protection Bureau, Boston, Mass, for Com.

Seymour Glanzer, Justin Simon, Andrew Miller, Dickstein, Shapiro & Morin, Washington, D.C., Tani E. Hofferman Windson, Locks, Conn., for First Nat. Supermarkets, Inc.

Curtis, Mallett-Prevost, Colt & Mosle, Donald L. Shuck, Jr., New York City, Donald B. Gould, Mark Pearlstein, Goodwin, Proctor & Hoar, Boston, Mass., for Stop & Shop.

David L. Foster, Richard L. Klein, Willkie, Farr & Gallagher, New York City, James S. Dittmar, Richard J. Yurko, Widett, Slater & Goldman, P.C., Boston, Mass., for Waldbaums, Inc.

MEMORANDUM AND ORDER ON MOTION TO COMPEL DEFENDANT FIRST NATIONAL SUPERMARKETS, INC. TO PROVIDE FURTHER RESPONSES TO PLAINTIFFS (SIC) INTERROGATORIES, FIRST SET AND PRODUCE FURTHER DOCUMENTS (# 70, FILED 5/30/86)

ROBERT B. COLLINGS, United States Magistrate.

In this case, the plaintiff has brought claims under the Sherman Act alleging a conspiracy in restraint of trade among the defendants in the termination of a program involving the redemption of manufacturers' coupons at twice their stated value at supermarkets operated by the three defendants. The program is referred to as offering "double coupons".

After hearing, it appears that the only matter in contention with respect to the plaintiff's motion to compel further answers to interrogatories and further production of documents from the defendant First National Stores, Inc. (hereinafter, "Finast") is interrogatory # 19. That interrogatory and Finast's objection and answer read as follows:

*Interrogatory No. 19:*

(a) State whether you or your counsel made any investigation regarding possible violations of the Sherman Act by any officer, agent, employee or former employee with respect to terminating the redemption of manufacturers' coupons at twice their stated value;

(b) If your response to subparagraph (a) is affirmative, provide the following:

(i) Identify each person who was interviewed in connection with any such investigation;

(ii) State the date and place of each such interview, and identify each person who was present;

(iii) Identify each document which records, reflects and/or refers to each such interview; and

(iv) Identify each person who was discharged, disciplined in any manner

or reprimanded for what was believed or found to be such a violation.

*Specific objection:* First National specifically objects to this Interrogatory insofar as it would require the disclosure of the mental processes and investigation of its counsel that was performed in anticipation of litigation, and insofar as it would require the disclosure of communications that are protected by the attorney-client privilege.

Answer: Subject to First National's previously stated General and Specific Objections, it responds as follows:

(a) Yes, the law firm of Dickstein, Shapiro & Morin conducted such an investigation on behalf of First National.

(b) First National declines to answer based on its General and Specific Objections.

Finast has subsequently answered subparagraph (b)(iv) of the interrogatory in the negative. *See* Memorandum Of Points And Authorities, Etc. (# 79) at p. 7.

John Kotelly, Esquire, of the firm of Dickstein, Shapiro & Morin has furnished a Declaration (Exhibit A to # 79) in which he avers that in July, 1982, the firm was retained by Finast to conduct an internal investigation of possible antitrust violations in Finast's Eastern Division and to advise Finast on the basis of the findings of the investigation. Mr. Kotelly states that he personally conducted the investigation and in so doing, interviewed various employees and reviewed various documents. The interviews were conducted in private and the only documents prepared as a result of the investigation were his handwritten and typewritten notes of interviews and memoranda which he prepared to summarize the results of the interviews. Mr. Kotelly states that none of these documents were produced or made available to the United States or to any counsel for co-defendants in the litigation. Last, Mr. Kotelly states that at the time the internal investigation commenced, it was anticipated that any facts which were developed which demonstrated criminal violations of the antitrust laws could result in both crim-

inal and/or civil litigation in which Finast would be a party.

█ It is clear that on these facts, the communications between the employees of Finast and Mr. Kotelly during the investigation are privileged, *Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), and the plaintiff does not argue to the contrary. Commonwealth's Reply, Etc. (# 83) at p. 3. I find that the documents were also prepared "in anticipation of litigation" as that term is used in Rule 26(b)(3), F.R.Civ.P.; while there was no litigation pending or imminent at the time of Mr. Kotelly's interviews, it is obvious that one of the primary reasons for undertaking the investigation was to determine whether or not violations had occurred and to prepare Finast to deal with any litigation which might result from such violations. Thus, the notes and memoranda are protected on two bases. If they reveal communications, they are protected by the attorney-client privilege; to the extent that they do not reveal communications, they reveal the attorney's mental processes in evaluating the communications. *Id.* at 401, 101 S.Ct. at 688.

Rather than seeking disclosure of the notes and memoranda or their contents, the plaintiff's interrogatories seek the names of persons (presumably employees) interviewed, dates of interviews, and description of documents. Plaintiff's counsel argues that neither the attorney-client privilege nor the work-product doctrine " ... provide a discovery shield for the names of persons who have provided information to an attorney, or the existence of documents, whether or not the documents are discoverable." Commonwealth's Reply, Etc. (# 83) at p. 4.

The issue of whether Finast should be compelled to identify any documents relating to the interviews as sought in interrogatory 19(b)(iii) is easily resolved. I interpret Attorney Kotelly's affidavit to state that the only documents responsive to the request are his handwritten and typewritten notes of interviews with Finast *employees* and memoranda summarizing the results of interviews with Finast *employ-*

*ees* and that these documents have not been disclosed to anyone other than Finast's officers and employees and Finast's attorneys. If this is the case, there is absolutely no reason to require an identification or specification of these documents; they are clearly privileged and no amount of specification can alter that conclusion. The only information which identification would provide to the plaintiff is the name of the employee interviewed and the date on which and the place or places at which the interview or interviews of that employee took place, which is precisely the information sought in interrogatory 19(b)(i) and (ii).

Thus, the issue to be decided is whether the plaintiff is entitled to the names of a corporation's employees who were interviewed by an attorney retained by the corporation and the dates and places of those interviews when the contents of the interviews are clearly privileged.

This issue was not before the Supreme Court in the *Upjohn* case, since Upjohn voluntarily provided the Government with a list of employees who were interviewed during the investigation. *Upjohn v. United States, supra,* 449 U.S. at 396, 101 S.Ct. at 686. In its opinion, the Court gave no hint that the names of persons interviewed were privileged and, in fact, indicated that the Government could question the employees who gave interviews during the investigation. The Court noted that as a result, its action in sustaining the privilege did not operate to keep the Government from learning relevant facts known by the employees but only to protect the content of what the employees communicated to the attorneys. As the Court noted in its quotation from *Philadelphia v. Westinghouse Electric Corp.,* 205 F.Supp. 830, 831 (E.D. Pa., 1962), a party cannot ask an adverse party what he said or wrote to his attorney but, on the other hand, an adverse party cannot decline to disclose relevant facts merely because the facts were related to an attorney. *Upjohn v. United States, supra,* 449 U.S. at 396, 101 S.Ct. at 686.

It is clear that the plaintiff is entitled to discover the " ... identity and location of persons having knowledge of any discoverable matter ...", Rule 26(b)(1), F.R.Civ.P., and that when a party propounds an interrogatory to an opposing party in those words, " ... no problem of attorney-client privilege arises, and it has been held repeatedly that such information is not work product ..."; in other words, " ... [an] interrogated party cannot avoid an answer on the ground that the names were learned by counsel in the course of an investigation ...". 4 Moore's *Federal Practice,* ¶ 26.-57[2], pp. 26–166–7 (1984 ed.).

However, when the terms of the interrogatory are not cast in terms of identification of persons with knowledge but rather in terms of the identification of persons interviewed by counsel, the work-product doctrine may be applicable. As stated in Professor Moore's treatise:

> In cases where the names sought go beyond those known to the interrogated party to have knowledge and beyond categories likely to have knowledge, and extend to those contacted and interviewed, the work-product doctrine may be applicable.

*Id.* at p. 26–167, footnote 2 citing *St. Paul Fire & Marine Insurance Co. v. King,* 45 F.R.D. 521 (W.D.Okla., 1968) and *Uinta Oil Refining Co. v. Continental Oil Co.,* 226 F.Supp. 495 (D.Utah, 1964).

The cases seem to support the distinction between asking the identity of persons with knowledge, which is clearly permissible, and asking the identity of persons contacted and/or interviewed during an investigation, which is not. The basis for not permitting interrogatories to be propounded which seek the names of persons interviewed by an adverse party is not found in Rule 26(b)(3), F.R.Civ.P., for that rule protects only "documents and things". Rather, the basis for not permitting interrogatories of this type is the Supreme Court's holding in *Hickman v. Taylor,* 329 U.S. 495, 567 S.Ct. 385, 91 L.Ed. 451 (1947), that an attorney's "work-product" is protected against discovery from an adverse party.

Thus, in the case of *St. Paul Fire & Marine Insurance Company, supra,* the Court sustained an objection to an interrogatory seeking the names and addresses of persons interviewed or contacted by the plaintiff and held that the interrogatory called for more than "the identity and location of persons having knowledge of relevant facts", which is what is allowed by the rule. *Id.,* 45 F.R.D. at 522–23. In the case of *Uinta Oil Refining Company v. Continental Oil Company, supra,* the Court sustained an objection to an interrogatory which sought the names of all persons from whom plaintiffs had taken or requested statements, stating:

> The detailed pattern of investigation and exploration in and of itself is not a proper subject for discovery.

*Id.,* 226 F.Supp. at 506 (footnote omitted). In the case of *Besley-Welles Corporation v. Balax, Inc.,* 43 F.R.D. 368 (E.D.Wis., 1968), the Court followed the holding in the *Uinta Oil* case and sustained an objection to an interrogatory calling for a detailed statement as to the efforts the adverse party had made to locate witnesses. The Court wrote that "[t]his goes to the attorney's preparation of his case for trial and therefore comes under the rule of *Hickman v. Taylor* ... which gives an attorney's work-product a qualified immunity from discovery.". *Besley-Welles, supra,* 43 F.R.D. at 371. Lastly, in the case of *Board of Education of Evanston TP v. Admiral Heating,* 104 F.R.D. 23 (N.D.Ill., 1984), the Court sustained an objection to an interrogatory propounded by the plaintiffs seeking identification of anyone the defendants "may have interviewed" on the subject matter of the case and the "circumstances of the interview". *Id.* at 32. The Court wrote that the interrogatory, to the extent that it seeks identification of persons who have knowledge of the subject matter, is permissible but:

> [to] go beyond that—to tell plaintiffs whom defendants have interviewed, where and when such interviews took place and whether or not a record was made—is to give plaintiffs no more knowledge of substantive relevant facts,

but rather to afford them the potential for significant insights into the defendant lawyers' preparation of their case (and thus their mental processes).

*Id.* at 32.

Plaintiff cites the case of *Lincoln Gateway Realty Co. v. Carri-Craft, Inc.,* 53 F.R.D. 303 (W.D.Mo., 1971) in support of its position. In that case, the plaintiff had already identified, apparently without objection, certain statements from witnesses. The Court overruled an objection to an interrogatory requesting the date the statements were taken and the identity of the person taking the statements. The Court stated that this interrogatory did not call for trial preparation materials within the meaning of Rule 26(b)(3), F.R.Civ.P., because the rule only protects documents and things and the defendant " ... does not inquire into the contents of any statements obtained by plaintiff in preparation for trial." *Id.* at 307. The Court did not go beyond Rule 26(b)(3) and decide whether the information was protected as "work-product" under the holding of *Hickman v. Taylor, supra,* possibly because the plaintiff had waived any "work-product" protection which attached to the taking of the statements by identifying the statements without objection in answer to an earlier interrogatory.

However, whatever the import of the holding in the *Lincoln-Gateway* case, I agree with the line of cases beginning with the *Uinta Oil* case in 1964 and continuing through the *Board of Education of Evanston TP* case in 1984 which hold that interrogatories which seek the names of persons interviewed by an adverse party's attorney together with the dates and places of such interviews are improper.

It is to be noted that the plaintiff can gain the information which it seeks by these interrogatories merely by rephrasing them so as to ask Finast to list the names and addresses of any witnesses, including its agents and employees, who have knowledge of facts concerning the termination of "double coupon" programs by any of the

defendants. In responding to this interrogatory, Finast would be required to list the names and addresses of all persons whom it knows have such knowledge, and the list would include the names of those of its employees whom its attorney interviewed if the interviews revealed that the employees had knowledge of the facts concerning the termination or if the corporation has other information that the employees who were interviewed have such knowledge. However, in answering this interrogatory, Finast would not have to reveal the pattern of investigation and exploration employed by its attorney, which I rule is protected from discovery by the "work-product" doctrine.

For all of the above-stated reasons, it is ORDERED that the Motion to Conmpel Defendant First National Supermarkets, Inc. To Provide Further Responses To Plaintiffs (sic) Interrogatories, First Set And Produce Further Documents (# 70), to the extent that the motion seeks an order compelling further answers to interrogatory # 19, be, and the same hereby is, DENIED.