Patricia S. SAVOY, Plaintiff,

v.

RICHARD A. CARRIER TRUCKING, INC., Peter E. Johnson, Sr., and United States Fidelity and Guaranty Company, Defendant.

Civ. A. No. 97–30006–MAP.

United States District Court, D. Massachusetts.

Nov. 6, 1997.

Francis D. Dibble, Jr., Jerome M. Scully, Bulkley, Richardson & Gelinas, Springfield, MA, for Plaintiff.

John G. Bagley, Egan, Flanagan & Cohen, P.C., Springfield, MA, for Richard A. Carrier Trucking, Inc. and Peter E. Johnson, Sr.

Richard F. Faille, Law Offices of Faille, Higham & Daniels, Springfield, MA, for United States Fidelity & Guaranty Company.

*MEMORANDUM AND ORDER WITH RESPECT TO MOTION FOR A PRO-TECTIVE ORDER BY DEFENDANT (Docket No. 32) and MOTION FOR PROTECTIVE ORDER BY DEFEN-DANTS · RICHARD A. CARRIER TRUCKING, INC. AND PETER E. JOHNSON, SR. (Docket No. 41)*

NEIMAN, United States Magistrate Judge.

1.

On May 15, 1997, Patricia S. Savoy ("Plaintiff") served document requests and interrog-atories on all three defendants in her person-al injury suit, Richard A. Carrier Trucking, Inc. ("Carrier Trucking"), Peter E. Johnson, Sr. ("Johnson") and United States Fidelity & Guaranty Company ("Fidelity"). On June 23, 1997, having not yet responded to Plain-tiff's requests, Fidelity moved for a protec-tive order seeking protection from all discov-ery. *See* Docket No. 20. On August 5, 1997, the court denied Fidelity's motion and or-dered Fidelity to respond to Plaintiff's inter-rogatories and document request within four-teen days. The court continued:

> If any issues remained with respect to any interrogatory or document request, it shall be Defendant [Fidelity]'s, rather than Plaintiff's, burden to forthwith seek protec-tion from the Court. Any such motion shall specify the grounds with regard to each interrogatory or document request at issue.

*Id.* at margin notation. Fidelity then pro-duced some documents and served Plaintiff with answers to the interrogatories, but moved for a protective order with respect to Interrogatory Nos. 14, 16 and 17. *See* Dock-et No. 32. Fidelity sought no protective order with respect to any other interrogatory or document request. Throughout this time period, neither Carrier Trucking nor Johnson sought a protective order.

At a hearing on Fidelity's second motion for a protective order, the court granted Fidelity until September 25, 1997 to supple-ment its motion in order to seek a protective order both with regard to Interrogatory Nos. 4, 5, 6 and 7 and certain documents request-ed by Plaintiff. Fidelity never filed the sup-plemental request. Instead, as reported by Plaintiff, Fidelity produced some but not all of the remaining documents. These docu-ments will be addressed below in the context of Carrier Trucking and Johnson's indepen-dent motion for a protective order. Howev-er, it is clear that Fidelity's answers to Inter-rogatory Nos. 4, 5, 6 and 7, for which Fidelity no protection has been sought, must be sup-plemented by Fidelity forthwith.

With respect to Interrogatory Nos. 14, 16 and 17, for which Fidelity has in fact sought

protection, the motion will be denied with respect to any inquiry in Interrogatory Nos. 16 and 17 regarding Fidelity's employees in Massachusetts and, if the Fidelity office which handled Plaintiff's claim was outside Massachusetts, that office as well. In all other respects, the motion for a protective order regarding Interrogatory Nos. 16 and 17 will be allowed.

■ Interrogatory No. 14 presents a more difficult issue. It seeks details about a monetary reserve established by Fidelity with respect to Plaintiff's claim. Plaintiff asserts that information regarding the reserve is relevant to whether Fidelity "fail[ed] to effectuate prompt, fair and equitable settlement[ ] of [a] claim[ ] in which liability has become reasonably clear." M.G.L. ch. 176D, § 3. *See Whyte v. Connecticut Mut. Life Ins. Co.,* 818 F.2d 1005, 1010–12 (1st Cir.1987) (discussing chapter 176D, § 3); *see also Kerlinsky v. Fidelity & Deposit Co. of Maryland,* 690 F.Supp. 1112, 1117 (D.Mass.1987) (victim of unfair insurance act or practice which violates ch. 176D may maintain a private cause of action under M.G.L. ch. 93A). The amount, timing and identification of the reserve, Plaintiff maintains, will reveal whether Fidelity made a prompt investigation and assessment of her claim. *See Yeagle v. Aetna Cas. & Sur. Co.,* 42 Mass.App.Ct. 650, 679 N.E.2d 248, 249 (1997) (insurer's internal reports and assessments of claim are relevant to whether insurer failed to make a prompt, fair and equitable settlement of a claim in which liability was reasonably clear).

In response, Fidelity argues that the amount of its reserve in no way represents a determination, let alone an acknowledgment, of liability. Rather, Fidelity points out, it sets a reserve aside as a matter or course based on its past experience and the projected cost of litigation, so that it can cover its losses as they are incurred. A reserve amount is also flexible, Fidelity maintains, and once established it may be modified for various reasons related to any number of changed circumstances.

Fidelity's argument to the contrary, the court finds the information sought in Interrogatory No. 14 to be within the broad realm of relevancy applicable to discovery. The time the reserve was established may well reveal information relevant to the claims made by Plaintiff against Fidelity, including the nature and scope of Fidelity's investigation, review, consideration and rejection of her claim. "The information sought will to some degree demonstrate the thoroughness with which [Fidelity] investigated and considered plaintiff's claim and thus is relevant to the question of the good or bad faith of defendant in denying the claim." *Atlanta Coca–Cola Bottling Co. v. Transamerica Ins. Co.,* 61 F.R.D. 115, 117 (N.D.Ga.1972). Moreover, the date and amount of the reserve, as well as any modification of that amount, may well relate to Fidelity's determination of its potential risk in this matter and, hence, reveal its view on liability. *See, e.g., Forcucci v. U.S. Fidelity & Guar. Co.,* 817 F.Supp. 195, 202 (D.Mass.1993). Fidelity has not convinced the court otherwise.

Nonetheless, the court is reluctant to order that information regarding the actual amount of the reserve, as initially established or modified, be provided at this point in the litigation. The amount goes to the heart of Fidelity's legal strategy and could adversely affect not only its position, but that of its insured who is defending the underlying claim. Indeed, in the court's view, District Judge Michael A. Ponsor foresaw just such a problem when ruling on Fidelity's early motion to sever. Judge Ponsor denied the motion and ordered that the matter go forward jointly against all defendants, but reserved the right to take "adequate protective measures ... during discovery or trial, if needed." *See* margin note at Docket No. 18. This is one of those necessary times. Accordingly, the Court will allow Fidelity's motion for a protective order with regard to the amount of the reserve, as originally established or modified, provided that Fidelity shall be prepared to reveal that information at the final pre-trial conference should Judge Ponsor so order. In all other respects, the motion regarding Interrogatory No. 14 will be denied. Accordingly, all remaining information sought by Interrogatory No. 14 must be provided forthwith.

2.

When Fidelity, despite the opportunity to do so, did not seek a further protective order with respect to Plaintiff's document request, the court was prepared to order Fidelity to produce the documents. However, Carrier Trucking and Johnson interposed their motion for a protective order, see Docket No. 41, the very motion which the court was expecting from Fidelity. Thus, in essence, Fidelity has transferred to Carrier Trucking and Johnson the burden of protecting the documents which Plaintiff seeks.

The three sets of documents for which protection is sought are as follows:

1.   a recorded statement given by Johnson and taken by Fidelity's claims representative on October 5, 1994;

2.   Fidelity's claims representative's summary of Johnson's October 5, 1994 statement; and

3.   Fidelity's claims representative's written communications with Carrier Trucking and Johnson's attorney.

For present purposes, Plaintiff does not oppose the motion with respect to the third class of documents. Accordingly, Carrier Trucking and Johnson's motion in that regard will be allowed.

■ With respect to the remaining documents, Carrier Trucking and Johnson claim that they are protected by the work product doctrine. Generally speaking, communications by employees to counsel acting at the direction of corporate superiors in order to secure legal advice are protected by an attorney-client privilege. *Upjohn Co. v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981). As the Supreme Court indicated, the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* This privilege applies as well when the client is a corporation, although complications arise in such cases given the artificial nature of the entity. *Id.* at 389–90, 101 S.Ct. at 682–83.

■ The shelter afforded by the attorney-client privilege, however, "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Id.* at 395, 101 S.Ct. at 685. For example, "[t]he client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.* at 396, 101 S.Ct. at 686 (quoting *City of Philadelphia v. Westinghouse Elec. Corp.,* 205 F.Supp. 830, 831 (E.D.Pa.1962).) *See also Massachusetts v. First Nat'l Supermarkets, Inc.,* 112 F.R.D. 149, 152 (D.Mass. 1986) ("a party cannot ask an adverse party what he said or wrote to his attorney but, on the other hand, an adverse party cannot decline to disclose relevant facts merely because the facts were related to an attorney"). The scope of the attorney-client privilege is fact sensitive and must be addressed on a case by case basis. *Upjohn,* 449 U.S. at 396–97, 101 S.Ct. at 686.

The work product doctrine provides another means by which parties may protect their attorneys' trial preparation thoughts and materials. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It is this doctrine on which Carrier Trucking and Johnson primarily rely. Although the work product doctrine is "intertwined" with the attorney-client privilege, *Harding v. Dana Transp., Inc.,* 914 F.Supp. 1084, 1089 (D.N.J. 1996) (citing *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975)), its purpose differs:

The attorney-client privilege exists to keep inviolate confidences of clients to their attorneys, thereby presumably enhancing the communication exchange. The work product doctrine, however, seeks to enhance the quality of professionalism within the legal field by preventing attorneys from benefitting from the fruit of an adversary's labor.

*Id.* at 1096. *See also Hickman,* 329 U.S. at 511, 67 S.Ct. at 393–94 (describing fundamentals of work product doctrine).

14

Plaintiff, at least in part, seems to acknowledge the inherent conflict among the defendants. In opposition to *Carrier Trucking and Johnson's* motion for protective order, Plaintiff argues that the motion cannot protect *Fidelity* from producing certain documents in the context of Plaintiff's claim against *Fidelity* under M.G.L. chapters 93A and 176D. "Even if the Johnson statement and the synopsis were created in anticipation of litigation of the underlying tort claim," Plaintiff argues, "it can not reasonably be argued—and no such argument has been made—that the statement was taken and the synopsis was made in anticipation of a *claim against [Fidelity]* for unfair claim settlement acts and practices under M.G.L. ch. 176D and 93A." Plaintiff's Opposition (Docket No. 42) at 5. Moreover, Plaintiff argues, Fidelity has waived any work-product protection because it specifically relied on Johnson's statement when it asserted that liability on the part of its insured, i.e., Carrier Trucking, was not "reasonably clear." [1] It would be fundamentally unfair, Plaintiff continues, for her to be required to meet an element of her case against Fidelity, i.e., that liability on the part of Fidelity's insured was reasonably clear, without sufficient information regarding the factual substance of that element. *See Harding,* 914 F.Supp. at 1098–99 (recognizing waiver of work-product protection).

Johnson and Carrier Trucking, on the other hand, assert that the documents sought are clearly protected by the work product doctrine. Through her attorney, Plaintiff notified Carrier Trucking on or about September 15, 1994, that she had been injured in an automobile accident caused by its negligence and that she was making a claim for damages. *See* Plaintiff's First Amended Complaint, at ¶ 25. Only afterwards, on October 5, 1994, did Fidelity's claim representative take Johnson's recorded statement. The statement and the summaries prepared by the claims representative, Carrier Trucking and Johnson argue, were clearly prepared in anticipation of litigation and should be protected as work product. *See* Defendants' Motion at Exhibit C (Denne Aff.).

■ The court finds that the documents are indeed work product. The fact that the statements may not have been made in anticipation of a future claim against Fidelity for unfair settlement practices, as Plaintiff argues, does not make them any less so.

■ Nonetheless, Carrier Trucking and Johnson concede that material sought to be protected by the work product doctrine is still discoverable upon a showing that a party seeking discovery has a "significant need" for the material and cannot obtain the substantial equivalent without "undue hardship." Fed.R.Civ.P. 26(b)(3); *Connelly v. Dun & Bradstreet, Inc.,* 96 F.R.D. 339, 343 (D.Mass. 1982). One such "significant need" may be for statements taken from parties or witnesses at the time of the incident. *See Tiernan v. Westext Transp., Inc.,* 46 F.R.D. 3, 3–4 (D.R.I.1969). Such statements are unique in that they provide an immediate impression of the facts. *Id.* A lapse of time itself may make it impossible to obtain the substantial equivalent of the material sought. *Phillips v. Dallas Carriers Corp.,* 133 F.R.D. 475, 480–81 (M.D.N.C.1990).

In all these respects, Plaintiff has the better argument. Moreover, the reported loss of Johnson's log book enhances the need for the documents. The maintenance of such a log or other record of a driver's duty status is required by federal regulations. *See* 49 C.F.R. § 395.1, *et seq.* Each defendant, however, apparently claims that the book is not in its possession, custody or control. Johnson's nearly contemporaneous statement, therefore, has no real equivalent. The offer

1. In answer to an interrogatory, in which Plaintiff sought the basis for Fidelity's assertion that her claim was not "reasonably clear," Fidelity answered as follows:

   "There is a great difference in the facts surrounding how the accident occurred between the Plaintiff's and the Defendant's versions. This accident was caused at least in part by a drunk driver who fled the scene of the accident. This driver was forcing the Defendant's motor vehicle to the right when the Plaintiff merged into the travel lane of the Defendant. This information is taken from the recorded statement by the Defendant, of the driver, the police report and the recorded statement of the Plaintiff."

   Answer to Interrogatory No. 12 (Docket No. 42) at Exhibit A.

by defendants to produce Johnson for deposition does not suffice.

■ Finally, Johnson's statement and Fidelity's summary of that statement are clearly relevant to Plaintiff's bad faith claims against Fidelity. Documents which are normally deemed work-product may be justifiably produced to an opposing party when they are within the "exclusive knowledge of the other party" and relevant to a claim of bad faith. *See Nationwide Mut. Fire Ins. Co. v. Smith,* 174 F.R.D. 250, 252 (D.Conn. 1997) (need for evidence of pre-denial conversations between experts retained by insured overrides any work product protection in a bad faith action); *APL Corp. v. Aetna Cas. & Sur. Co.,* 91 F.R.D. 10, 13–14 (D.Md.1980) (holding that plaintiff met undue hardship burden of Rule 26(b)(3) for documents relating to bad faith claim against insurer, although insurer was not compelled to disclose mental impressions of its attorney or the representative). In fact, Fidelity itself does not seek protection for the documents. Moreover, there is no claim on the part of any defendant that the documents contain a mixture of privileged mental impressions and discoverable information. Accordingly the court will deny Carrier Trucking and Johnson's motions with respect to Johnson's recorded statement and Fidelity's synopsis thereof.

### CONCLUSION

As more particularly described above, Fidelity's motion for a protective order (Docket No. 32) is DENIED in part and ALLOWED in part with respect to Interrogatory Nos. 16 and 17. Similarly, with respect to Interrogatory No. 14, the motion is ALLOWED in part and DENIED in part. With respect to Carrier Trucking and Johnson's request for a protective order (Docket No. 41), the motion is ALLOWED with respect to written communications with their attorney, but otherwise DENIED. To the extent Plaintiff, in opposition, seeks sanctions, that request is DENIED.

IT IS SO ORDERED.